WIGGINTON, Judge.
We have for review in these consolidated appeals and the second amended emergency petition for writ of prohibition and common law certiorari the orders of Duval County Juvenile Court Judges Brooke and Pate ordering the appearance of Department of Health and Rehabilitative Services Secretary Gregory Coler on August 27, 1990, to explain why the Department did not have sufficient funding to place the appellees/children in psychiatric/therapeutic residential placement as recommended by the Case Review Committee. Also pending are motions to dismiss the petition for writ of prohibition and common law certiorari. For the following reasons, we grant the motions to dismiss the petition filed in Case No. 90-2475 and reverse the orders entered in the remaining eases.
As a preliminary matter, we note that by order, this court earlier granted in Case No. 90-2475 the petitioners’ motion to treat its second amended emergency petition for writ of prohibition and common law certio-rari and its reply to respondents’ response to the petition as the initial and reply briefs in the separate consolidated appeals.[1] Consequently, the facts and issues as set forth in the emergency petition in Case No. 90- *366 2475 are identical to those involved in the consolidated appeals.
From July 16, 1990, to July 19, 1990, Duval County Juvenile Court Judge Alban Brooke held hearings to reveal the status of four dependent, emotionally disturbed children who had been committed to the custody of the Department of Health and Rehabilitative Services. Prior to each review, the Department District 4 Case Review Committee (hereinafter the “CRC”), had recommended various residential therapeutic placements for the children. However, the Department explained to Judge Brooke at each respective hearing that due to limitations in the amount of the legislature’s appropriations for such placements, the Department was prohibited by section 216.311, Florida Statutes (1989), and other law, from agreeing to and making the recommended placements.[2] Judge Brooke, obviously highly agitated and frustrated by this announcement, and recognizing that the Department had received two million additional dollars in appropriated money in 1990, as well as the fact that “we are now in the third week of the fiscal year” and the Department was announcing it was out of money, stated on the record that in the event the placements were not accomplished by August 27, 1990, he would require HRS Secretary Gregory Coler to appear on that date in order for the court to inquire into the Department’s available alternatives such as the transfer of monies from other programs in order to effectuate the recommended placements, and to consider contempt sanctions.
Accordingly, on July 24, 1990, Judge Brooke signed identical orders pertaining to each of the four children, W.J., O.W., J.B., and J.R., requiring HRS to place the children in available placements as recommended by the individual predisposition studies and the CRC recommendations. The order also recognized that no money is presently available for such purpose and will not be available the entire fiscal year (1990-1991). Finally, the order concluded that if the children were not placed, there would be a hearing held on August 27, 1990, to determine why the Department had not placed the children in the appropriate and recommended therapeutic treatment and to determine whether an order to show cause should be issued to the Department. Additionally, Secretary Coler was ordered to appear at the hearing and if he failed to respond to said order, a subpoena for his attendance would be issued.
The judge ordered Secretary Coler to appear despite a letter submitted to him from Lee Johnson, acting district administrator for the Department, informing him that the budget allocated for the fiscal year 1990-1991 was lower than that which was actually needed, and pointing out that the Department was prohibited by section 216.311 from expending or committing funds in excess of the approved budget allocation. Mr. Johnson also enclosed a copy of the spending plan for the purchase of residential treatment services for children for the fiscal year, indicating the budget expenditures with each provider agency in which the children were currently placed for psychiatric residential treatment. It also revealed that by the date of the letter, the Department had incurred a $159,642 deficit for psychiatric residential treatment of children and adolescents. Mr. Johnson went on to explain that since the Department is constrained to “live within the budget,” it was deferring long-term residential mental health placement of CRC-referred children until additional resources become available. He assured Judge Brooke that the Department would individually review those cases where it is believed that a failure to provide residential treatment would result in a clear and present danger to the child or adolescent. The judge was advised that further steps to be taken to control and reduce the deficit would include case management, stepping children down to less expensive placements, and focusing upon nonresidential, community-based ser *367 vices through the family services planning and intervention team process.[3] Mr. Johnson closed by stating that he was available to discuss any questions or concerns the judge at any time may have.
On August 7, 1990, August 17, 1990, and August 20, 1990, Judge Pate reviewed the status of A.G., R.H., and P.H. who had been committed to the temporary custody of the Department. Again, therapeutic residential treatment had been recommended by the CRC, but, as with the other four children before Judge Brooke, the Department announced it could not agree to make the recommended placement of the children due to a lack of appropriated funds. At the August 7 hearing, Judge Pate indicated that either the legislature was wrong in failing to appropriate sufficient funds or the Department was wrong in failing to request sufficient appropriations. For these alternative reasons, Judge Pate signed an order requiring the appearance of Secretary Coler at the August 27, 1990 hearing, previously scheduled by Judge Brooke, to inquire into the Department’s efforts to obtain appropriations with respect to the funding of residential therapeutic placements. A similar order was signed by Judge Pate on August 17 in the case of P.H., and on August 20 in the case of R.H.
The issues presently before us as raised in the petition and in the consolidated appeals are (I) whether Judge Brooke’s orders interfere with HRS’ executive discretion concerning the placement of dependent children in derogation of the doctrine of separation of powers; (II) whether Judge Brooke’s orders requiring HRS to unlawfully make placements in excess of appropriated- funds and whether both Judge Brooke’s and Judge Pate’s orders requiring the appearance of Secretary Coler encroach upon a legislative prerogative in derogation of the doctrine of separation of powers; and (III) whether the judges’ orders requiring the appearance of Secretary Coler interfere with the secretary’s executive discretion in derogation of the doctrine of separation of powers. In response to these issues, we first address respondents’ motion to dismiss the second amended emergency petition for writ of prohibition and common law certiorari.
Specifically, respondents move to dismiss the petition for writ of prohibition on the basis that petitioners have another appropriate and adequate legal remedy as shown by the fact that they have already appealed the contested orders and have received a stay pursuant to such appeal. English v. McCrary, 348 So.2d 293, 297 (Fla.1977). Similarly, respondents move to dismiss the second amended emergency petition for common law certiorari on the basis that petitioners have already appealed from the orders, thus showing that they have an adequate legal remedy by appeal. Department of Health and Rehabilitative Services v. C.G., 556 So.2d 1243 (Fla. 5th DCA 1990). In both instances, respondents urge that this court should treat the consolidated petitions as notices of appeal and order compliance with the appropriate provisions of the Rules of Appellate Procedure pursuant to Skinner v. Skinner, 561 So.2d 260 (Fla.1990).
*368 We agree with respondents’ position on this issue and therefore grant their motion to dismiss the second amended emergency petition for writ of prohibition and for common law certiorari, and hereby dismiss the petition. Compare In the Interest of K.A.B., 483 So.2d 898 (Fla. 5th DCA 1986) (As legal custodian in that case, HRS was held entitled to appeal the order directing placement of the child pursuant to section 39.14(1), Fla.Stat.). As earlier noted, this court has already treated the petition, the responses thereto and the replies to the responses as the briefs appropriately filed in the consolidated appeals. Additionally, for purposes of the appeals, we treat the appendices to the petition and reply as the appellate record.
Turning now to the issues raised on appeal, appellants' Point I urges that Judge Brooke’s orders interfere with the Department’s executive discretion concerning the placement of dependent children in derogation of the doctrine of separation of powers. Relying on the decision in In the Interest of K.A.B., 483 So.2d 898 (Fla. 5th DCA 1986), appellants argue that as part of its executive function, as primarily set forth in Chapter 409 of the Florida Statutes, the Department of Health and Rehabilitative Services has discretion concerning the placement of dependent children when committed to its custody, and its discretion is not subject to judicial scrutiny regarding its identification of a specific placement.[4] We do not disagree with this proposition.
Section 409.145(1), Florida Statutes (1989),[5] requires the Department to “conduct, supervise, and administer a program for dependent children and their families.” Additionally, “[wjithin funds appropriated,” section 409.165(1) requires the Department to supervise a program of foster homes, group homes, agency-operated group treatment homes, non-psychiatric residential group care facilities, psychiatric residential treatment facilities, and other appropriate facilities to provide shelter and care for dependent children who must be placed away from their families. Additionally, in the event that HRS is granted custody of the child or children under section 39.41, Florida Statutes, section 39.41(5) provides that the Department will have “the right to determine where and with whom the child shall live....” See In the Interest of K.A.B.
In the present case, HRS’ discretion in placing the dependent children was nonetheless constrained by the limits of legislative appropriations. Specifically, section 394.4781, Florida Statutes, requires the Department to administer a program to purchase mental health services for children diagnosed to be psychotic or emotionally disturbed. However, section 394.4781(3)(b) mandates that all therapeutic residential placements made by the Department be conditioned upon a monthly review of all applications therefore “in accordance with available funds.” Additionally, as set forth above, section 409.165(1) clearly limits the Department’s supervision to “funds appropriated.”
To implement the Department’s review power under section 394.4781, and as authorized by section 394.4781(3)(c), the Department promulgated Rule 10E-10.020, Florida Administrative Code,, to provide for the creation of a Case Review Committee in each district to review and approve referrals to programs for mental health treatment of psychotic or emotionally disturbed children. CRC recommendations are purely advisory. Rule 10E-10.018 clearly establishes that a child who has been determined by a CRC to be appropriate for a mental health program is merely eligible, not entitled, to such a placement. The function of the CRC, rather, is to provide uniform case review and to advise the Department as to the most beneficial treat *369 ment available. Section 394.4781 then allows for placement of these children in accordance with available appropriations. Thus, as appellants argue, the Department is not required in all cases to follow the CRC recommendation in placing these children. Indeed, as the decision in K.A.B. points out, “it is within the discretion of the agency to decide where to keep a child who is in its custody,” and the trial court has not been granted the authority to direct “precisely” where the child is cared for, but only to place the child in the Department’s custody. 483 So.2d at 899.
Nevertheless, simply because the trial court cannot order a child to be placed in a specific institution does not necessarily preclude the court from placing other conditions on the exercise of the Department’s discretion to place the child. For instance, earlier in F.B. v. State, 319 So.2d 77 (Fla. 1st DCA 1975), this court addressed the intent behind section 39.01(9), Florida Statutes (Supp.1974), which contains language identical to present section 39.41(5). In doing so, the court recognized that although the legislature delegated to the Department the power to make the determination as to where and with whom the child should live, i.e., the particular institution or foster care facility in which the child should be placed, “[t]his facility selection power is all the authority that this statute confers.” Id. at 79. Thus, it was held that the trial court did not infringe on the Department’s power as it did not order the Department to place the subject children in any particular foster care facility; In restating its reasoning in Division of Family Services v. State, 319 So.2d 72 (Fla. 1st DCA 1975), this court emphasized that the broad grant of discretion given the Department in placing the child or children committed to its custody is neither “unfettered” nor is the Department permitted to “flaunt [or] ignore specific provisions contained in the custodial order.” 319 So.2d at 79. Likewise, in Division of Family Services, it was repeatedly emphasized that the legislative intent embodied in Chapter 39 was “that the court and not the agency have primary responsibility in custody matters.” 319 So.2d at 75.
Applying the foregoing authorities to the orders under review in the instant case as challenged in Point I, it is clear that Judge Brooke only directed that the Department place the child “in available placement as recommended” by the CRC. No order for placement in a specific institution was made as was done in K.A.B. and the language arguably is consistent with the discretionary authority granted to the Department pursuant to section 394. 4781, insofar as the order may be interpreted so that the Department need not place the children as recommended by the CRC if there are neither funds nor facilities available. Thus, this particular portion of the identical orders under review by Judge Brooke do not necessarily contravene the statutory scheme. Reading the orders as narrowly as possible, they do not facially interfere with the Department’s executive discretion concerning the placement of dependent children in derogation of the doctrine of separation of powers by ordering the children to be placed in specific institutions.
A similarly narrow analysis may be applied to Point II in resolving the issue thereunder — whether Judge Brooke’s orders require the Department to “unlawfully” make placements in excess of appropriated funds, and whether both of the judges’ orders require the appearance of Secretary Coler — thereby encroaching upon a legislative prerogative in derogation of the doctrine of separation of powers. Again, we have no reservations in agreeing with appellants’ general proposition made under Point II that the Department’s administration of mental health programs for psychotic and emotionally disturbed children is expressly conditioned upon the availability of appropriated funds. See sections 409.165(1), 394.4781(2), and 394.-4781(3)(b), Fla.Stat. Moreover, section 216.311 makes it unlawful for any agency within the state government to contract to spend money in excess of appropriations therefore. That latter section would affirmatively proscribe any placements required by a trial court order where appropriations were insufficient.
*370 We also have no argument with the proposition espoused by appellants that a trial court may not enter a placement order, as a constitutional matter, in derogation of the legislature’s prerogative to make appropriations. Very recently, in In re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990), the Florida Supreme Court observed that although the funding of the public defender’s offices was woefully inadequate, the legislature’s appropriations power was nonetheless off limits to the courts. Thus, had the orders of Judges Brooke and Pate required the Department to make placements that would exceed the amounts set forth in the annual appropriations act by the legislature, or had they in any way encroached upon the legislature’s power of appropriation, they would have been rendered in excess of the judges’ jurisdiction. However, as noted under Point I, the orders were not so specific. Indeed, the orders under review observe that the Department is lacking the appropriate funding to place the children in the recommended therapeutic treatment facilities. Rather than ordering that the children be placed nonetheless, the court simply requested that the secretary appear at a hearing to determine why the Department has not placed the children in appropriate treatment facilities.
The Second District Court of Appeal faced a similar dilemma in In the Interest of J.C., 548 So.2d 1161 (Fla. 2d DCA 1989). Therein, the court recognized that a trial court cannot require the Department to place a child regardless of its funding situation at that time. Nevertheless, it also observed that neither it nor the trial court was convinced that the Department “pursued every possible avenue to obtain the funds necessary for the placement.” Id. at 1163. The Second District went on to hold that “[ujntil it is established that the funds are not obtainable and, therefore, unavailable, ... we cannot agree with HRS that the trial court exceeded its authority by ordering J.C. to be placed under conditions offering rehabilitative treatment.” Id. Similarly, the question whether or not it was established before Judges Brooke and Pate that funds were not obtainable and were unavailable leads us into a discussion of the third and final point raised as to whether the trial courts had authority and jurisdiction to order the secretary of the Department of HRS to appear to testify before it and whether the secretary enjoys any executive immunity in that regard.
It is abundantly clear from the transcripts of the hearing that the judges were dismayed by the Department’s budgetary decision-making and concerned with its ability to transfer funds to accomplish the appropriate placements. Judge Brooke made it clear on the record that his justification for requiring the appearance of Secretary Coler is for the secretary to explain the possibility of the transfer of money among the Department’s programs. Judge Pate alternatively explained that she is requiring Secretary Coler’s appearance to inquire as to the Department’s budgetary request from the legislature. Nonetheless, as pointed out by appellants, transfers of appropriated monies among agency programs are strictly within the secretary’s executive discretion and only permitted if deemed necessary by changed conditions. See sections 216.292(2) and 20.19(9)(b), Fla. Stat. In turn, budgetary decision-making is strictly within the secretary’s executive discretion. See section 20.19(9)(a) and (b). Section 20.19(9) is a corollary to sections 216.023 and 216.031 which place responsibility for making budget requests for submission to the legislature and the Governor in the head of each state agency.
Appellants urge that the orders requiring Secretary Coler’s appearance at the consolidated hearing for the reasons stated are an unlawful violation of the secretary’s executive privilege in derogation of the doctrine of separation of powers. They maintain that as a high official in the executive branch of the government who serves at the pleasure of the Governor, see section 20.19(2)(a), Secretary Coler is entitled to an immunity from any such requirement. In this case, appellants submit that the secretary’s appearance or non-appearance could not lead to the disclosure of any facts upon which the judges would have jurisdiction to act or against which to issue an order to show cause. The judges were therefore *371 clearly without jurisdiction to require the secretary’s appearance regarding his transfer of monies or his making of budgetary decisions. Cf. Kirk v. Baker, 229 So.2d 250 (Fla.1969).
Appellants’ argument that the courts cannot demand Secretary Coler to transfer funds or to force his hand in making discretionary budgetary decisions is well taken. As was earlier observed by our supreme court in Kirk v. Baker,
the respective branches of government in our country have throughout our history assiduously avoided any encroachment on one another’s authority. In those few instances where difficult cases have arisen, each branch has had enough foresight and respect for the orderly functioning of the governmental processes to avoid a confrontation.
229 So.2d at 253.
The present case is indeed a difficult one, and, as in any other case involving the discretionary integrity of the respective branches of government, we will not only zealously protect the independence of the judicial branch but will, with equal vigor, guard the constitutional prerogatives of the other branches under the doctrine of separation of powers. In that light, it is apparent that the issues involved in these appeals valiantly attempt to reconcile the power of the Department, as an arm of the executive branch, to exercise its delegated authority in child custody matters, with the broad authority of the circuit courts under Chapter 39 of the Florida Statutes to direct and review the exercise of that power.
Appellants conceded at oral argument in this matter that Secretary Coler does not enjoy unlimited executive immunity. Certainly, the separation of powers doctrine would not preclude a circuit court from calling before it a member of the executive branch for narrowly defined informational purposes. Kirk v. Baker; Girardeau v. State, 403 So.2d 513 (Fla. 1st DCA 1981). For instance, nothing within the above-referenced statutory scheme would prohibit a circuit court from requiring a minimal explanation as to why children cannot be placed in a recommended facility in order to implement its power and authority under Chapter 39 to assure that dependent children of the state receive adequate care. Children in the custody of HRS have a clear right to receive necessary medical and mental health services and the Department has no discretion to withhold such - services. See section 39.-001(2)(b). However, the information that the court is entitled to obtain must necessarily be limited to information relevant to the issues before it. We agree with the observation of the United States District Court for the Eastern District of Pennsylvania that “[djepartment heads and similarly high-ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and unavailable from a lesser ranking officer.” Halderman v. Pennhurst State School and Hospital, 559 F.Supp. 153 (E.D.Pa. 1982).
In the present case, the relevant issue was whether funds were available in order to place the dependent children in therapeutic residential treatment facilities. That question was competently answered in the letter submitted by Lee Johnson. However, as discussed earlier, any inquiry involving the discretion of the secretary would not be a relevant inquiry and the judges would have been precluded from inquiring into those mattérs had this court condoned the hearing ordered by Judge Brooke. For that reason, because we hold that the record has already established the relevant information, it was an abuse of the trial court’s discretion to demand that Secretary Coler appear before it under pain of contempt to provide information that is largely within the realm of the secretary’s discretionary authority.
In summary, the petition for writs of prohibition and common law certiorari are hereby dismissed in Case No. 90-2475. The orders under review in the remaining consolidated appeals are hereby REVERSED.
ERVIN and MINER, JJ., concur.

. The proceedings below were also stayed pending resolution of the issues raised herein.

. Section 216.311(1) provides:
No agency of the state government shall contract to spend, or enter into any agreement to spend, any moneys in excess of the amount appropriated to such agency unless specifically authorized by law, and any contract or agreement in violation of this chapter shall be null and void.

. Indeed, exemplifying this dynamic review process is the fact that by the date of oral argument in this case, November 30, 1990, O.W., J.B., and J.R. had been placed in therapeutic residential settings. WJ. was presently placed at the Youth Crisis Center, a shelter facility where he receives follow-up from Case Management, the Children's Mobile Emergency Intervention Team, and staff located at Baptist Children’s Home from the Child Guidance Center. W J. also continues in therapy and receives close management follow-up care. During oral argument, counsel for appellants explained that the three placements for O.W., J.B., and J.R. suddenly and fortuitously appeared due to the unexpected release of two other children and the "running away” of the third. However, because W.J., and the three children under Judge Pate’s orders have not been appropriately placed as per the CRC recommendations, counsel urged that this court not consider the issue of the appropriateness of the judges’ orders moot. (Nonetheless, appellee Karen Ibach, as Guardian Ad Litem of O.W. filed a suggestion of mootness in Case Nos. 90-2432 and 90-2807. Since O.W. has been appropriately placed, the issue pertaining to Judge Brooke’s order calling for O.W.’s placement is obviously moot. Accordingly, we note the suggestion of mootness in that case, but the outstanding issue of the judges’ authority to call Secretary Coler before the court must still be resolved in the remaining cases.)

. In K.A.B., the Fifth District affirmed a trial court's order of placement, but in doing so, deleted the words "at County Acres," holding that under section 39.41(3), Florida Statutes (Supp.1984) [identical to the present section 39.-41(5) discussed infra ], "it is crystal clear that it is within the discretion of the [Department] to decide where to keep a child who is in its custody." 483 So.2d at 899.

. Unless otherwise indicated, all statutory references will be to the 1989 version of the Florida Statutes.