583 So.2d 765 (1991)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
V.L., a child, et al., Appellees.
No. 90-2620.
District Court of Appeal of Florida, Fifth District.
August 1, 1991.
James A. Sawyer, Jr., Dist. Legal Counsel, Orlando, for appellant.
James M. Russ of James M. Russ, P.A., Orlando, for appellees.
PETERSON, Judge.
HRS requests review of the circuit court's order requiring it to place V.L. into an appropriate, secure, long-range psychiatric facility located within the state within ten calendar days of its order and to pay all costs assessed by such facility. We vacate only that part of the order requiring HRS to place V.L. into the facility within ten days.
V.L., a 16-year-old child, was adjudicated dependent in 1975 at the age of nine months and was placed into the custody of her maternal grandmother. On March 23, 1988, the court ordered involuntary placement pursuant to section 394.467, Florida Statutes (1987). Placement was later changed to the temporary custody of HRS, and after receiving various intensities of treatment at different facilities, V.L. ran away on two different occasions. She was eventually restrained in a juvenile detention center pursuant to an order that indicated she was a clear and present danger to herself or the community and that immediate psychiatric evaluation was required.
The evaluation indicated that V.L. was "severely emotionally underdeveloped and *766 character disordered" and was diagnosed as having an "oppositional defiant disorder with prognosticated borderline personality disorder." It was recommended that she be placed in a "setting in which she can receive daily psychotherapeutic intervention of an intense kind in relationships on a constant basis." The evaluation concluded, "It is for her protection that this is recommended." An emergency child review committee (CRC) met and recommended level IV placement,[1] "long-term residential treatment, secure." The CRC also noted that PRTS [Purchased Residential Treatment Services] funding should be checked, presumably to determine whether funds were available for her treatment. Such treatment could cost as much as $47,450 per year if V.L. were placed in one particular Florida facility that provides the type of care prescribed and in which she could be placed immediately.
HRS raises two issues  whether the circuit court had jurisdiction to place a foster child in a long-term residential treatment facility at HRS's cost, and whether the evidence supported the trial judge's finding that HRS had funds available in the PRTS appropriations to pay the cost.
We believe that Department of Health and Rehabilitative Services v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991), is dispositive of the issues in the instant appeal. In Brooke, the CRC had recommended therapeutic residential treatment, and the circuit court directed HRS to place the child "`in available placement as recommended' by the CRC." Id. at 369. No specific institution was ordered consistent with In Interest of K.A.B., 483 So.2d 898 (Fla. 5th DCA 1986). The Brooke court upheld the trial court's order because on its face it did not interfere with executive discretion of HRS concerning the placement of dependent children. An order requiring placement in a specific institution would have been in derogation of the doctrine of separation of powers.
The Brooke court analyzed the problem currently facing our entire state government  availability of funds to finance state programs. Availability of funds is also the largest problem in the instant case since evidence was presented at the hearing that District 7, the district to which V.L. would look to funds for her support and treatment, had a current-year deficit of PRTS funding of approximately $155,000. Testimony also was presented that the statewide PRTS deficit was approximately $1.4 million. V.L.'s counsel argues that, after hearing all the evidence, the trial court entered an order which incorporated a finding that funds were available and that we should not disturb that finding during this review. No such written finding was made by the court and the only oral statement by the court was that, since HRS had an appropriation of $22 million, it could find the funds necessary for V.L.'s treatment. That observation is contrary to the ample and basically uncontradicted evidence that the District 7 PRTS budget would be operating at a deficit if any new children, including V.L., were placed in the required type of treatment center. That observation ignores the budgetary and fiscal responsibility requirements of governmental operations. Each fiscal year, government must appropriate funds for services to be provided. The services are limited by the funds appropriated for those services, and the appropriations are limited by revenues. Although the appropriations may be inadequate to provide treatment for V.L. and other children in like circumstances, the legislature's appropriations power is nonetheless off limits to the courts. In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla. 1990); Department of Health and Rehabilitative Services v. Brooke, 573 So.2d at 370. The plight in which V.L. and HRS find themselves is not different from that of a child with similar problems, whose treatment will not be publicly funded, and the child's loving and caring parents. Like HRS, such parents typically have financial limitations to consider in determining when and where medical assistance will be forthcoming. Should V.L. have immediate and unlimited treatment *767 simply because she is a charge of a public agency with limited funds while the family without public assistance must limit treatment to its budget?
In this case, HRS has prioritized V.L. for the type of treatment ordered by the trial court. While the treatment ultimately provided to V.L. may not be by the specific institution selected by V.L.'s counsel, the type of treatment recommended must be afforded to her when funds are available. Recognition must also be given to the reality that, while she may be at the top of the priority list to receive the treatment ordered, she may lose that priority if a child appears on the scene with a problem more severe than her own. It is difficult to face the fact that raw economics plays a role in the timeliness and degree of treatment, but such is the plight of the family without public funding, and those using the services of HRS must also recognize the reality of budgetary constraints. As the number of persons utilizing HRS services continues to expand, the plight of the HRS appears to deteriorate more rapidly, but it is not the judiciary's role to revise legislative appropriations or to interfere with an agency's discretionary budgetary decisions.
We find that the circuit court's order conformed to existing law with the exception of the requirement that V.L. be placed within ten days. We vacate that portion of the order imposing this time limitation but direct HRS to provide the placement when funds become available.
VACATED in part.
W. SHARP and COWART, JJ., concur.
NOTES
[1] § 394.4781(3)(b), Fla. Stat. (1989); Fla. Admin. Code Rule 10E-10.014.