615 So.2d 834 (1993)
In the INTEREST OF L.W., a Minor.
No. 91-3461.
District Court of Appeal of Florida, Fourth District.
March 17, 1993.
*835 Joy A. Bartmon of the Law Offices of Bartmon & Bartmon, Boca Raton, and Sheri L. Orlowitz, Co-counsel, of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for appellant.
Pamela Wynn, Sr. Atty. for Dept. of Health and Rehabilitative Services, West Palm Beach, for appellee.
WARNER, Judge.
This case involving the placement of a very emotionally disturbed juvenile puts a face on the continuing battle between the courts, the Department of Health and Rehabilitative Services (HRS), and the critical lack of funds for troubled children. The issue involved is whether a court exceeds its authority when it orders a child permanently committed to HRS for adoption placement to be cared for in a therapeutic foster home or residential treatment facility. The Department claims that the court has no authority to order any particular type of placement. Albeit with considerable frustration, the trial court agreed with the legal position of the Department. However, we disagree and find that a trial court does have the authority to order such placement if it complies with the statutory requirements.
We fear that the facts of this case are similar to cases repeated over and over *836 again given the shortage of resources to take care of our troubled children. We elaborate on the facts to give substance to the problem.
L.W. was born to a 12 year old mother. L.W.'s first contact with the court system was in 1987 at age ten when she advised her teachers at school that she had been sexually abused by the live-in boyfriend of her baby-sitter. The first reports of the guardian ad litem state that her mother showed little or no concern for the child. At that point the mother, age 23, had three other children. The guardian recommended L.W.'s placement with a maternal aunt. However, about nine months later, the child reported that her uncle had sexually assaulted her, and the aunt no longer would take responsibility.
The next report of the guardian ad litem in the dependency proceedings contained further information that L.W. was in emotionally handicapped classes at school, being considered retarded. Her mother continued to neglect her oldest daughter, and none of the family members believed L.W.'s allegations of sexual abuse. Various therapists who dealt with L.W. with regard to the sexual abuse allegations felt that she would benefit from counselling. In the meantime, L.W. was placed with a shelter family, as the Department concluded that her mother could not protect her or provide her with care at this time.
The Department and the mother entered into a performance agreement in April of 1989, but the mother failed miserably in abiding by it. The impression obtained by reading this record is that the mother, a child herself when L.W. was born, has not grown up even though she had three other children. She has no concept of how to care for her offspring.
Having reported that her prior foster mother hit her, L.W. went to live with a foster family in western Palm Beach County. She reported to the guardian ad litem that a man in her neighborhood there sexually abused her. HRS provided her with after school counselling sessions to deal with the issues of sexual abuse.
About fourteen months after being adjudicated a dependent, the mother signed an affidavit of surrender. The father's whereabouts were unknown, and a termination order was entered, committing L.W. to the custody of HRS for the purpose of subsequent adoption. This order was entered in August of 1990. The record reveals that L.W. has had a very difficult time dealing with this ultimate rejection by her mother.
In January of 1991, HRS filed its first review report with the court indicating that recruiting was continuing for a permanent home for L.W. At the same time, the court received a letter from the child's therapist relating to the court that L.W. had been in "at least ten (10) placements  all of them unsuccessful. Each placement has ended abruptly, as the caretakers realize their inability or unwillingness to deal effectively with [L.W.'s] severe symptoms." The therapist detailed L.W.'s more severe problems, including "sexually acting out", noting that not only was L.W. a target for sexual abuse, she also was initiating sexual experiences with her peers and with younger children. She also exhibited severe uncontrolled temper tantrums, the management of which have not responded to outpatient treatment. The therapist recommended immediate placement of L.W. in a therapeutic setting.
The guardian ad litem also filed a report for the judicial review which corroborated much of the information relayed by the therapist. The guardian reported that L.W. had been moved fourteen times since she was adjudicated. (Apparently, she has been moved so many times no one can get an accurate count.) She has behavioral disorders as well as developmental and emotional disorder. The guardian recommended that L.W. be placed in a therapeutic foster home or residential treatment center. However, she advised the court that HRS had told her that although such homes would be appropriate for this child, the lack of financial funding by HRS prohibits L.W.'s placement. The guardian concluded that HRS was "sorely neglect[ing]" L.W.'s needs.
*837 After reviewing these reports, the trial court entered an order that the child be placed in either a therapeutic foster home or in residential treatment which deals specifically with retarded adolescents or sexually abused adolescents. Thereafter, HRS filed a motion to set aside the order compelling placement contending that this court's decision in State ex rel. Dept. of Health and Rehabilitative Services v. Nourse, 437 So.2d 221 (Fla. 4th DCA 1983), determined that a court had no jurisdiction to direct specific placement and treatment of a juvenile committed to HRS. In addition HRS specifically disagreed with such placement as being appropriate. No evidence was offered to support its position. After several responses from the guardian ad litem, the trial court determined that it was bound by Nourse and had to vacate the order. In its stead, the trial court found the following:
Pursuant to Florida Statute 39.47(4), the Court retains jurisdiction of this child for the purpose of reviewing progress being made toward permanent adoptive placement. Part V of Florida Statute 39.453(c) specifically states that the jurisdiction of the Court after termination of parental rights is for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement. The court determines that virtually no progress is being made toward adoption because of the refusal of the Department of Health & Rehabilitative Services to place this child in an appropriate therapeutic setting to assist her in resolving her emotional and behavioral problems.

From this order the guardian has appealed.
The Florida Juvenile Justice Act begins with the recitation of the legislative purposes which include:
(a) To provide judicial and other procedures through which children and other interested parties are assured fair hearings and the recognition, protection, and enforcement of their constitutional and other legal rights ... (emphasis added).
(b) To provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; and to promote the health and well-being of all children under the state's care.
§ 39.001(2)(a) & (b), Fla. Stat. Further, the act provides in section 39.002(1)(a)-(h), Florida Statutes:
(1) GENERAL PROTECTIONS FOR CHILDREN. It is a purpose of the Legislature that the children of this state be provided with the following protections:
(a) Protection from abuse, neglect, and exploitation.
(b) A permanent and stable home.
(c) A safe and nurturing environment which will preserve a sense of personal dignity and integrity.
(d) Adequate nutrition, shelter, and clothing.
(e) Effective treatment to address physical, social, and emotional needs, regardless of geographical location.
(f) Equal opportunity and access to quality and effective education, which will meet the individual needs of each child, and to recreation and other community resources to develop individual abilities.
(g) Access to preventive services.
(h) An independent, trained advocate, when intervention is necessary and a skilled guardian or caretaker in a safe environment when alternative placement is necessary.
After parental rights are terminated and a minor is placed in the custody of the Department for adoptive placement, the circuit court has jurisdiction for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement, pursuant to the provision of part V of the Juvenile Justice Act. § 39.47(4), Fla. Stat. (1991). The portions of the statute on judicial review require the holding of periodic hearings where the social service agency reports on the compliance with its mission, i.e. the adoptive placement of the child. In that regard, the court must consider "the appropriateness of the child's current placement." § 39.453(7)(g). Fla. Stat. The court can hold the social service agency in contempt if it believes *838 that the agency has not complied with its obligations as specified in the written performance agreement. It can require the agency to submit plans for compliance with the agreement. § 39.453(8)(c), Fla. Stat. We recognize that the statute speaks in terms of performance agreements and placement plans, but as the legislature expressly made the provisions of judicial review of part V applicable to post-termination jurisdiction of the courts, we conclude that this includes plans for compliance by the Department with its duty to L.W. to find adoptive placement.
Further authority for the trial court's order directing placement of the child in a therapeutic setting is found in section 39.407(4), Florida Statutes which provides:
A judge may order a child in the physical custody of the department to be treated by a licensed health care professional. The judge may also order such child to receive mental health or retardation services from a psychiatrist, psychologist, or other appropriate service provider. If it is necessary to place the child in a residential facility for such services, then the procedures and criteria established in s. 394.467 or chapter 393 shall be used, whichever is applicable.
While this section is found in part III (dependency), it pertains to any child in the custody of the Department, which, after termination of parental rights, applies to L.W. Thus, the judge may initiate the proceedings to place the child in residential treatment and ultimately order placement in such a facility in accordance with the statutory procedures.
If the court is prevented from taking any action to promote the enforcement of the rights of the children and require accountability from the Department after post-termination custody is awarded to it, as the Department seems to suggest, then the purpose of judicial review is superfluous. We cannot assume that the legislature intended the court to conduct a meaningless review. Therefore, we must conclude that the purpose of judicial review is to assure that the Department is complying with reasonable efforts to assure the protection of this child and to promote her adoptive placement as is the Department's duty. Where the court receives evidence that the Department is not complying with its duties and that the child is not being afforded the services and protections which the legislature expressly provided, then the trial court can act and order the Department to submit a plan which provides those services and will promote the child's adoption.
We find State ex rel. Dept. of Health and Rehabilitative Services v. Nourse, 437 So.2d 221 (Fla. 4th DCA 1983), to be distinguishable. In that case, the child was a delinquent, not a dependent, and the trial court had ordered the secretary of HRS to personally detain the child. This court stated that the court does not have the jurisdiction to manage the details of rehabilitation. However, under delinquency proceedings after the dispositional order there is no continuing duty of judicial review as there is in dependency and termination proceedings. Therefore, the obligation and duty of the circuit court is entirely different. In proceedings such as are present here, there is a continuing statutory duty of judicial review. This marks a decided difference between Nourse and the present case.
This case is more like State ex rel. Dept. of Health and Rehabilitative Services v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991). In that case, after a case review committee had recommended residential therapeutic placement for four children committed to the custody of the Department, the trial court ordered HRS to place the children in the recommended placements as they became available. The Department appealed raising a similar argument as is raised in this case. The appellate court affirmed because the trial court's order did not require a placement in a specific institution and did not contravene the Department's authority, under section 394.4781, Florida Statutes (1991) not to place children in treatment facilities where there are no funds or facilities available. The First District noted that despite the funding limitations *839 and statutory authority of the Department, "the legislative intent embodied in Chapter 39 was `that the court and not the agency have primary responsibility in custody matters.' See Division of Family Services v. State, 319 So.2d 72 (Fla. 1st DCA 1975)."
Thus, in the instant case the court had the authority to review the progress of L.W. That authority is not limited to advisory comments that the Department is not doing its job of protecting and providing for the welfare of this child. The court has the authority to require the Department to develop specific plans to accomplish the goal of adoption. Further, the court may order placement of the child in a therapeutic setting. However, such order must be in compliance with the provisions of Chapter 393 or 394. The trial court in this case overlooked these statutes. They require a hearing and review by the Department. Therefore, upon remand and after an appropriate hearing, the court may determine that the Department shall initiate such proceedings. After the required recommendations and hearings, the court may order L.W. to be placed in available treatment. However, as in Brooke, the court cannot compel placement regardless of the funding situation.
We surmise that L.W. is approaching sixteen years old. Her problems are severe, yet she is being offered little effective help to combat them. At age 18 she becomes an adult. Has the juvenile system of this state done anything meaningful to protect her and make her a productive citizen? Is she any better off having been taken from her family? Have any of the protections the Legislature stated are to be provided the children of this state been provided to her? What kind of an adult will she become, given her past? And whose fault will it be if she cannot cope in an adult world  hers, her mother's, the state's? L.W.'s odyssey is but one story of many similar stories before the juvenile judges of this state.
These are indeed difficult cases. The Legislature has imposed a daunting responsibility on the Department to provide for the needs of the children of this state but apparently has not provided the funds necessary to accomplish the task. On the other hand, it has given the courts the duty to review the actions of the Department to assure the protection of the minor child, but the absence of needed funds has limited the trial court's ability to assure the protection of the child's rights and welfare. The losers in all this are the children like L.W.
We reverse and remand this case for further proceedings and with the fervent hope that before L.W. leaves the jurisdiction of the juvenile justice system she will be provided with help which will bring some measure of tranquility to her troubled life.
STONE, J., and ROSS, DALE, Associate Judge, concur.