726 So.2d 322 (1999)
Helen BROWN, et al., Appellants,
v.
Ed FEAVER, et al., Appellees.
No. 98-227.
District Court of Appeal of Florida, Third District.
January 13, 1999.
Rehearing Denied March 17, 1999.
*323 Bernard P. Perlmutter, Coral Gables, and Arthur J. Rosenberg; Christina A. Zawisza, and John M. Ratliff, Ft. Lauderdale; Timothy Arcaro; William Grimm, for appellants.
Robert A. Butterworth, Attorney General, and Stephanie A. Daniel, Tallahassee, Assistant Attorney General, for appellees.
Before JORGENSON, LEVY, and GERSTEN, JJ.
GERSTEN, J.
This is a class action in which the plaintiff class seeks declaratory and injunctive relief to require the Department of Children and Family Services ("Department") to either provide monetary housing assistance and housing-related services to the class members, or be precluded from placing their children in foster care. We affirm the entry of summary judgment in favor of the Department.
Helen Brown has custody of her four nephews. In 1991, her house was condemned by the Dade County Building and Zoning Department as being unfit for human habitation. The Department subsequently threatened to place Brown's nephews in foster care because she could not afford to house them adequately. Brown attempted to purchase a new house. She asked the Department to advance her the funds necessary for a down payment on the home so that she and her family could begin occupancy. The Department, however, did not provide the requested funds and Brown filed suit.
Brown sought an injunction to require the Department to provide her with the requested housing assistance in order to obviate the need to place her nephews in foster care. She also sought a declaration that, without offering such assistance, the Department could not take custody of her nephews. She contended that such relief was required by Chapters 39 and 409 of the Florida Statutes and that failure to interpret these chapters in this manner violates the Florida and federal *324 constitutions as well as the federal Adoption Assistance and Child Welfare Act ("AACWA"), 42 U.S.C. §§ 620-628, 670-676 (1991).
Brown subsequently amended her complaint and moved for class certification. The amended complaint was essentially the same as the original except that it named several additional class representatives, some of whom had already lost custody of their children to the state. The trial court certified the class and granted the Department's subsequent motion for summary judgment.[1] This appeal followed.
In 1980, Congress enacted the AACWA as part of the Social Security Act. The AACWA creates a cooperative federal-state program through which the federal government provides participating states funding for child welfare programs. The purpose of the AACWA is to ensure some form of judicial oversight in state child removal proceedings and to reduce the amount of time that children spend in foster care. See In re Application of L.L., 653 A.2d 873 (D.C.App.1995). A significant portion of Florida's funding for foster care services comes from the federal government and receipt of those funds is dependent on the state's compliance with this Act. See 42 U.S.C. §§ 622, 671 (1991).
The State of Florida implements the AACWA through the Florida Juvenile Justice Act, Chapter 39 of the Florida Statutes, and related provisions found in Chapter 409. Under Chapter 39, a child may be placed in foster care only if he or she has been "abused, neglected, or abandoned." See §§ 39.401-39.402, Fla. Stat. (1997). Homelessness, derived solely from a custodian's financial inability, does not constitute abuse, neglect, or abandonment unless the Department offers services to the homeless custodian and those services are rejected. See § 39.01, Fla. Stat. (1997); K.H. v. State, Department of HRS, 527 So.2d 230 (Fla. 1st DCA 1988). When services are offered and rejected by a homeless custodian, the child is deemed "neglected" and foster care is warranted. See § 39.01(36), Fla. Stat. (1997).
The legislature affords the Department broad discretion in determining what "services" to offer families in need of assistance. See Department of HRS v. B.J.M., 656 So.2d 906 (Fla.1995). The Department's discretion is limited in only two respects: (1) it is limited by the resources available to the Department, see Department of HRS v. B.J.M., 656 So.2d at 916 (the Department must constantly take into account budgetary constraints when deciding how to allocate its limited funds among a virtually unlimited number of needs), and (2) it is limited by judicial oversight as to the "reasonableness" of the services provided when the state seeks custody of a child, see § 39.402(7)(b)5, Fla. Stat. (1997).
In seeking injunctive relief, the class contends that they have a constitutional right to housing assistance. Their argument, simply stated, is that because class members have a fundamental right to custody of their children, the state must provide child welfare services in the manner least offensive to this right when it offers such services. See Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). According to the class, the least offensive means of providing welfare services for these homeless children is to provide class members with funding so that they can provide shelter for the children in their care.
While this solution to the social problem is appealing on one level, the downside is that it calls upon the judiciary to order funding to support the low income families. This is not the judiciary's prerogative. See Department of Child. & Fam. Servs. v. Birchfield, 718 So.2d 202 (Fla. 4th DCA 1998); State, Department of HRS v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991). See also Dandridge v. Williams, 397 U.S. *325 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (rejecting fourteenth amendment challenge to Maryland statute which placed a ceiling on the AFDC grant available to a single family irrespective of the number of persons in the family); Black v. Beame, 550 F.2d 815 (2nd Cir.1977) (rejecting fourteenth amendment challenge to state's failure to provide housing services sufficient to keep a family unit together); Ramos v. Montgomery, 313 F.Supp. 1179 (S.D.Cal.1970) (three-judge court), aff'd, 400 U.S. 1003, 91 S.Ct. 572, 27 L.Ed.2d 618 (1971). As the U.S. Supreme Court stated:
[T]he intractable economic, social and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.
Dandridge v. Williams, 397 U.S. at 487, 90 S.Ct. at 1163. Neither the federal nor the state constitution guarantees family unity at state expense.
The class also contends that the AACWA and the Florida Juvenile Justice Act require the requested funding. Although the class correctly points out that one of the purposes of the AACWA and the Florida Juvenile Justice Act is to keep children with their families where possible, see 42 U.S.C. § 625(a)(1)(C); § 39.001(d), Fla. Stat. (1997), the possibility of doing so is largely determined by the resources available to the Department. The legislature has not given the courts control over the state's resources, nor could it without a constitutional amendment, and hence, the courts may not direct the Department to use them in any particular manner. See State, Department of Child. & Fam. Servs. v. Birchfield, 718 So.2d at 202; Department of HRS v. B.J.M., 656 So.2d at 916; Department of HRS v. Brooke, 573 So.2d at 371. To do so would constitute a clear violation of the separation of powers doctrine. See Art. II, § 3, Fla. Const.; State, Department of Child, & Fam. Servs. v. Birchfield, 718 So.2d at 202; Department of HRS v. Brooke, 573 So.2d at 371.
In dependency proceedings, the legislature specifically limited the judicial role to (1) determining whether the child has been abused, neglected, or abandoned (i.e. whether it is in the child's best interest to be removed from his or her custodian's custody), see §§ 39.401(1)(b)1, 39.402(1)(a), Fla. Stat. (1997), and (2) determining whether the Department has made reasonable efforts to prevent the need for foster care, see § 39.402(7)(b)5, Fla. Stat. (1997). If the dependency court does not believe that reasonable efforts have been made to prevent the need for foster care, the court is only empowered to order the child to remain with or be returned to his or her custodian. It may not order the Department to provide specific services. See State, Department of Child. & Fam. Servs. v. Birchfield, 718 So.2d at 202; Department of HRS v. Brooke, 573 So.2d at 371. Injunctive relief, therefore, is inappropriate.
Furthermore, since a dependency court cannot deprive a parent of custody of his or her child where there is no abuse, neglect, or abandonment, see §§ 39.401(1)(b)1, 39.402(1)(a), Fla. Stat. (1997), and since there is no abuse, neglect, or abandonment where a homeless parent accepts the services offered by the Department, see § 39.01, Fla. Stat. (1997), the class members' fundamental rights are not truly threatened by the Department under the present statutory scheme. The class members can maintain or regain custody of their children simply by accepting whatever services the Department offers. Consequently, the class does not need a declaration defining "reasonable" for the dependency courts. Declaratory relief, therefore, is inappropriate as well. See Santa Rosa County v. Administration Comm'n, Div. of Admin. Hearings, 661 So.2d 1190 (Fla.1995).
Accordingly, summary judgment in favor of the Department is affirmed in all respects.
Affirmed.
NOTES
[1] The class was defined as follows:

all parents, legal guardians, and custodians of minor children who have been, presently are, or will be removed from their custody by the Department of Children and Family Services and placed in state custody, or who cannot regain custody of their children from the Department, in whole or primarily because they are, or are about to become, homeless, or are unable to provide adequate shelter.