904 So.2d 527 (2005)
OFFICE OF the STATE ATTORNEY FOR the ELEVENTH JUDICIAL CIRCUIT, Petitioner,
v.
Edward POLITES, Derrick Nottage, and Willie Rice, Respondents.
Office of the Public Defender, Petitioner,
v.
The State of Florida, Respondent.
Nos. 3D04-3147, 3D04-3060, 3D04-3059, 3D04-3207.
District Court of Appeal of Florida, Third District.
May 25, 2005.
Rehearing Denied June 22, 2005.
*528 Katherine Fernandez Rundle, Assistant State Attorney, and Penny H. Brill, Assistant State Attorney, and Fariba Komeily, Assistant State Attorney, for petitioner, Office of the State Attorney for The Eleventh Judicial Circuit.
Bennett H. Brummer, Public Defender, and John E. Morrison, Assistant Public Defender, for petitioner, Office of the Public Defender.
Bennett H. Brummer, Public Defender, and John E. Morrison, Assistant Public Defender, for respondent, Willie Rice.
Fox & Loquasto, Susan Fox, Tampa and Wendy Loquasto, Tallahassee, for respondent, The Eleventh Judicial Circuit of Florida.
Howard Babb, Jr., Public Defender, Fifth Judicial Circuit, for the Florida Public Defender Association, as Amicus Curiae.
Before GREEN, RAMIREZ, and WELLS, JJ.
RAMIREZ, J.
We have before us four Petitions for Writs of Certiorari seeking relief from orders directing the Office of the State Attorney or the Office of the Public Defender to pay for mental health examinations that they had not requested. We grant the Petitions because the orders under review depart from the essential requirements of law, and hold that the court, by ordering these examinations, is the entity responsible to pay for the costs of the experts.

I. FACTS
The facts in all four cases are very similar in that the trial court ordered mental health examinations that had not been requested by the litigants. In case number 3D04-3147, Edward Polites was charged with first degree felony murder. After Polites was found competent to stand trial, adjudicated not guilty by reason of insanity, and found to have met the criteria for involuntary commitment, he was committed to the Department of Children and Families and has been continually committed since January 2002. The hospital where Polites is currently located issued its yearly report in 2004, recommending a less restrictive placement for him.
At the hearing to determine Polites' placement, the trial court believed that it was required to appoint two experts, thus it would charge the costs of the experts to both the defense and the State. The trial court appointed Dr. Sanford Jacobson. The public defender objected because Dr. Jacobson was the expert the Office of the Public Defender had already hired as its confidential expert. The trial court then stated that it would appoint Dr. Sonia Ruiz for the defense and would charge the Office of the Public Defender for the cost of Dr. Ruiz's evaluation.[1] Over the public *529 defender's objection, the trial court then appointed Dr. Gustavo Fonte as the second expert and charged the cost of Dr. Fonte's evaluation to the State. The state attorney also objected because the State had not requested that an expert be appointed. The trial court entered a written order requiring the State to pay for Dr. Fonte's evaluation.
In case number 3D04-3059, Derrick Nottage was charged with driving while his license was revoked as a habitual offender and resisting an officer without violence. The trial court was concerned that Nottage was not responding to its questions at the arraignment and plea hearing, so the court sua sponte determined that Nottage needed a psychological evaluation and appointed Dr. Sanford Jacobson to evaluate Nottage. The trial court stated it would pay for the evaluation out of its own budget earmarked for such expenditures.
Nottage was eventually placed in custody and evaluated by Dr. Jacobson, who opined that Nottage appeared to be incompetent to stand trial. The trial court stated that it would conduct a hearing on Nottage's competency. The state attorney noted that there would need to be a second opinion, and the trial court stated that the State would have to pay for the examination and appointed Dr. Fonte to evaluate Nottage. The state attorney then withdrew its request. Nonetheless, the trial court appointed a second expert and ordered the State to pay Dr. Fonte for his examination. The court overruled the State's objection, reasoning that it was the State's initial burden to show competency because it was prosecuting Nottage.
Dr. Fonte completed his evaluation and found that Nottage was incompetent. The state attorney and the public defender offered to stipulate to Nottage's incompetence, but the trial court would not accept the stipulation. The court held another status hearing on Nottage's competency and issued a corrected order reflecting that the trial court had initially raised the issue of competency; that it had ordered the second evaluation; and that it had charged the cost of the evaluation to the State.
Finally, in case number 3D04-3060, Willie Rice was charged with burglary of an unoccupied structure and petit theft. The public defender raised the issue of Rice's competency to stand trial, and the trial court stated it would order two evaluations, one charged to the State and the other charged to the Office of the Public Defender. The state attorney objected because it had not asked for the evaluation. The trial court determined that there needed to be two evaluations and ordered that the State pay for one. Upon the request of the public defender, the trial court appointed Dr. Merry Haber as one of the mental health experts. The trial court asked the state attorney who it wanted to appoint, but the state attorney did not specify anyone. The trial court then asked the public defender for another name, and the public defender suggested Dr. Fonte. The trial court appointed Dr. Fonte to evaluate Rice. The trial court ordered the State to pay for the evaluation.

II. POINTS ON APPEAL
In these four cases, the Office of the State Attorney and the Office of the Public Defender contend that the trial court departed from the essential requirements of the law in requiring a party to pay for *530 costs of an expert when that party did not request that the expert be appointed. The petitioners contend that the cost of the expert's evaluation should be deemed an element of the court system and should be paid from the trial court's operational budget.
In response, the Eleventh Judicial Circuit claims that the orders requiring the petitioners to pay for the initial evaluations do not depart from the essential requirements of law because the petitioners are required by statute to pay these costs. The respondent contends that the State Attorney's Office is required by section 29.005(3), Florida Statutes (2004), to pay for expert witnesses summoned by a state attorney and any other expert witnesses required in a court hearing by law. Similarly, the Public Defender's Office is required by section 29.006(3), Florida Statutes (2004), to pay for expert witnesses summoned on behalf of the indigent defendant and any other expert witnesses required in a court hearing by law. The respondent further contends that sections 29.005(4) and 29.006(4) require the State Attorney's Office and the Public Defender's Office, respectively, to pay for mental health professionals appointed pursuant to section 916.115(2), Florida Statutes (2004), and required in a court hearing involving an indigent defendant.
The issue before this Court is which entity pays for the costs of initial evaluations by these mental health experts, when they are not requested by a state attorney, a public defender, or a court-appointed counsel. As the Florida Public Defender's Association outlined in its amicus brief, this is an issue of statewide concern because other circuit courts in Florida are also entering these types of orders.

III. BACKGROUND INFORMATION
In 1998, the citizens of Florida passed an amendment to article V, section 14(c), of the Florida Constitution which provides, in pertinent part:
No county or municipality, except as provided in this subsection, shall be required to provide any funding for the state courts system, state attorneys' offices, public defenders' offices, court-appointed counsel or the offices of the clerks of the circuit and county courts for performing court-related functions.
This amendment had to be implemented by July 1, 2004. Before July 1, 2004, the counties paid for the costs of experts appointed by the trial courts out of their own budgets, whether the expert was appointed by the trial court because of a request by an indigent defendant or by the state attorney or by the trial court sua sponte. The legislature has appropriated to the state court system a $16.8 million budget to be used for due process costs including "expert witnesses not requested by any party which are appointed by the court", as well as a "due process contingency fund" of another $3.4 million in case more money was needed if the initial $16.8 million was insufficient. See Ch. 2004-268, § 7, at 1520 & 1518.
On August 26, 2004, the Chair of the Trial Court Budget Commission sent a memorandum to all Chief Judges and Trial Court Administrators explaining the policy decisions of the Commission. The memorandum states that any experts appointed pursuant to section 916.115(2) are to be paid from either the State Attorney's, Public Defender's, or court-appointed counsel's budget regardless of who asks for the appointment. The memorandum further states that the determination of which party should be charged was to be left to the discretion of each chief judge.

IV. PERTINENT STATUTES & RULES
Against this backdrop, we first find that we have jurisdiction. See State v. Martinez, *531 433 So.2d 1356 (Fla. 3d DCA 1983) (common law certiorari held as the appropriate vehicle for appellate court to review a trial court's order requiring the State Attorney's Office to pay for half of a defense exhibit ordered by the Public Defender's Office).
The relevant statutes and rules are sections 29.004(6), 29.005(3) and (4),[2] 916.115, Florida Statutes (2004), and Florida Rules of Criminal Procedure 3.210(b) and 3.218(c). Section 29.004 covers the Circuit Courts by stating, in pertinent part:
For purposes of implementing s. 14, Art. V of the State Constitution, the elements of the state courts system to be provided from state revenues appropriated by general law are as follows:
...
(6) Expert witnesses not requested by any party which are appointed by the court pursuant to an express grant of statutory authority.
Section 29.005 deals with the State Attorney's Office:
For purposes of implementing s. 14, Art. V of the State Constitution, the elements of the state attorneys' offices to be provided from state revenues appropriated by general law are as follows:
...
3) Witnesses, including expert witnesses, summoned to appear for an investigation, preliminary hearing, or trial in a case when the witnesses are summoned by a state attorney, and any other expert witnesses required in a court hearing by law or whomever the state attorney deems necessary for the performance of his or her duties.
4) Mental health professionals appointed pursuant to s. 394.473 and required in a court hearing involving an indigent, and mental health professionals appointed pursuant to s. 916.115(2) and required in a court hearing involving an indigent.
Section 916.115 sets forth the scheme for the appointment of experts:
(1)(b) The court may appoint no more than three nor fewer than two experts to determine issues of the mental conditions of a defendant in a criminal case, including the issues of competency to proceed, insanity and involuntary hospitalization or placement
. . . .
(2) Expert witnesses appointed by the court to evaluate the mental condition of a defendant in a criminal case shall be allowed reasonable fees for services rendered as evaluators of competence or sanity and as witnesses, which shall be paid by the county in which the indictment was found or the information or affidavit was filed.[3] ... The fees shall be taxed as costs in the case. In order for the experts to be paid for the services rendered, the reports and testimony must explicitly address each of the factors and follow the procedures set out in this chapter and in the Florida Rules of Criminal Procedure.
Florida Rule of Criminal Procedure 3.210(b) outlines the procedure to determine incompetence to proceed:
If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is *532 not mentally competent to proceed, the court shall ... order the defendant to be examined by no more than 3, nor fewer than 2, experts....
Florida Rule of Criminal Procedure 3.218(c), the rule on review of commitments following a judgment of not guilty by reason of insanity, as in Polites' case, states in pertinent part:
[T]he court may, on its own motion, and shall, on motion of counsel for the state or defendant, appoint no fewer than 2 nor more than 3 experts to examine the defendant relative to the criteria for continued commitment or placement of the defendant....
In addition, the Florida Legislature provided for the application of state revenues to the State Attorney's Office, the Public Defender's Office, and court-appointed counsel to cover the costs of mental health experts appointed pursuant to section 916.115(2). See §§ 29.005(4), 29.006(4), 29.007(5), Fla. Stat. (2004). The Florida Legislature also provided for the application of state revenues to the courts' system to cover the costs of expert witnesses not requested by any party that are appointed by the court pursuant to an express grant of statutory authority. See § 29.004(6), Fla. Stat. (2004). Section 916.115(1)(b) provides that express grant of statutory authority.

V. ANALYSIS
We agree with the State that the only reasonable construction of these rules and statutes is that the party who requests the appointment of the expert must pay for the expert. It is true that court appointed experts historically have been deemed to be nonpartisan. See Parkin v. State, 238 So.2d 817, 821 (Fla.1970), and Fla. R. Crim. P. 3.212(a). These court-appointed experts are necessary for the implementation of a fair system. See Miami-Dade Cty. v. Jones, 793 So.2d 902, 905-06 (Fla.2001). Furthermore, experts who are not requested by either party are supposed to be neutral experts. See Parkin, 238 So.2d at 821 (mental health experts appointed by order of the trial court are neutral experts working for the court). Consequently, where neither party requests the appointment of a mental health expert, the state court system must pay for that expert. The construction of the statutes in any other manner would violate the doctrine of separation of powers.
Article II, section 3, of the Florida Constitution provides that:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
Under the separation of powers doctrine "no branch may encroach upon the powers of another." See Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260, 264 (Fla. 1991). When a court interferes with an executive agency's discretion in spending its appropriate funds, it is encroaching on the powers of the agency. See, e.g., Dep't of Corr. v. Grubbs, 884 So.2d 1147, 1148 (Fla. 2d DCA 2004). Judges may not direct an executive agency to spend its money in a particular way. See Brown v. Feaver, 726 So.2d 322, 325 (Fla. 3d DCA 1999). Although the Office of the State Attorney is found in article V of the Florida Constitution, the judicial branch of the State, "the decision to prosecute is an `executive' function. A state attorney, while being a quasi-judicial officer, also shares some attributes of the executive. A judicial attempt to interfere with the decision whether and how to prosecute violates the executive component of the state attorney's office." Office of the State Attorney, *533 Fourth Jud. Cir. v. Parrotino, 628 So.2d 1097, 1099, n. 2 (Fla.1993) (citations omitted). We agree with petitioners that an assistant state attorney's decision not to request an expert witness be appointed to evaluate a defendant during the course of a prosecution is an executive decision on how to prosecute. Consequently, the trial judge's order requiring the State to spend money to pay for an expert that it did not request violates the separation of powers doctrine and departs from the essential requirements of the law. See Dep't of Corr. v. Grubbs, 884 So.2d 1147 (Fla. 2d DCA 2004).
With respect to public defenders, they are independent constitutional officers, according to article V, section 18, of the Florida Constitution. They are not part of the judiciary. See Schreiber v. Rowe, 814 So.2d 396, 398-99 (Fla.2002). The judiciary does not have the power to order another branch of government how to spend its funds. See Brown, 726 So.2d at 325 ("The legislature has not given the courts control over the state's resources, nor could it without a constitutional amendment, and hence, the courts may not direct the Department [of Children and Family Services] to use them in any particular manner. To do so would constitute a clear violation of the separation of powers doctrine."); see also Grubbs, 884 So.2d at 1147.
The Florida Supreme Court has recognized that "the courts should not involve themselves in the management of the public defenders office." See Skitka v. State, 579 So.2d 102, 104 (Fla.1991). Accordingly, in Polites' case, with respect to the Public Defender's Office, we agree that the trial court's order violated the separation of powers doctrine because it directed the Office of the Public Defender to spend money appropriated by the legislature. Additionally, a conflict of interest could arise when the Public Defender's Office is ordered to pay for an unwanted evaluation which could have an adverse effect on the length its client's confinement.
We further note, under Florida Rule of Criminal Procedure 3.218(c), the court may on its own motion and shall upon motion of counsel for the State or defense appoint no fewer than two nor more than three experts. Under Rule 3.218(c), the mental health expert is not appointed by the trial court unless one of three events occur: the trial court on its own moves for the appointment of experts, the defense specifically requests the appointment of experts, or the State specifically requests the appointment of experts. When it passed sections 29.005(4), 29.006(4), and 29.007(5), the Legislature acknowledged that system and allocated money for the Public Defender's Office, the State Attorney's Office or court-appointed counsel to pay for the costs of the mental health expert. In addition, recognizing that there would be circumstances under Rule 3.218(c) in which the trial court on its own motion appointed mental health experts, the Legislature provided in section 29.004(6) that in those circumstances, the trial court was responsible to pay for the costs of those evaluations.[4]

VI. CONCLUSION
In sum, we hold that the trial court's orders, which require petitioners to pay for the experts' initial evaluations in question *534 that petitioners did not request, are a departure from the essential requirements of law. The relevant statutes and rules do not authorize the trial courts to abandon the long-standing principle of separation of powers. Accordingly, we grant the petitions for writs of certiorari to review the orders requiring the petitioners to pay for the costs of the mental health experts. All four orders under review are quashed, and the three cases are remanded for the circuit court to pay the cost of the appointed experts at issue in each case.
Petitions granted; orders quashed and cases remanded.
NOTES
[1] In case number 3D04-3207, the Office of the Public Defender seeks a writ of certiorari quashing this order which required the Public Defender to pay for this mental health evaluation.
[2] The public defenders and court-appointed counsel have similar statutes: sections 29.006(3) and (4) and 29.007(4) and (5), Florida Statutes (2004), respectively.
[3] This statute was not amended to remove the county as the entity responsible for the payment.
[4] The trial court's ruling in the cases before us assumes that one party will always request a court-appointed neutral expert. However, as happened here, this results in a situation which requires parties to pay for experts that they do not want or request. However, as previously stated, the pertinent rules permit the trial court to act sua sponte, and the court itself may want to hire an expert.