722 So.2d 966 (1999)
M.W., a child, Petitioner,
v.
Arlonia DAVIS, Director of Adolescent Programs, Lock Towns Community Mental Health Center, Inc., and Florida Department of Children and Family Services, Respondents.
No. 98-3547
District Court of Appeal of Florida, Fourth District.
January 6, 1999.
*967 Carolyn Salisbury, Bernard Perlmutter and Kenneth David Daniel, Certified Legal Intern, University of Miami School of Law, Children & Youth Law Clinic, Coral Gables, for Petitioner.
Maria Guzman of Shutts & Bowen, L.L.P., Miami, for Respondents-Arlonia Davis, Director of Adolescent Programs, and Lock Towns Community Mental Health Center, Inc.
Robin H. Greene, Charles M. Auslander, Miami, for Respondent-Florida Department of Children and Family Services.

ON MOTION FOR REHEARING
KLEIN, J.
We grant the motion for rehearing filed by respondent, Department of Children and Family Services, withdraw our opinion filed on October 27, 1998 and substitute the following opinion.
By a petition for writ of habeas corpus, M.W. seeks relief from his detention in a locked mental health treatment facility in Broward County, called Lock Towns. He is detained pursuant to a September 23, 1998 order out of the circuit court in Dade County. Because this court does not have appellate jurisdiction over the trial court that issued the order, our review is limited to whether the trial court had jurisdiction to issue the order and whether the order is void or illegal. *968 See Alachua Reg'l Juvenile Detention Ctr. v. T.O., 684 So.2d 814 (Fla.1996).
M.W. is a fifteen year old dependent child who has been in the custody of the Department of Children and Family Services (Department) since the age of six, after being removed from his mother's custody because of allegations of abuse and neglect. During the time he has been in the custody of the Department, M.W. has lived in foster homes, group homes, hospitals, and his mother's home.
In June, 1998, on motion filed by the child's counsel, the court appointed a clinical psychologist on the faculty of the University of Miami School of Medicine to evaluate M.W., and he recommended that M.W. be placed in a "therapeutic foster home." On August 12, 1998, the court ordered that M.W., who had been in the crisis unit of Palmetto Hospital during this period, be placed in a specialized therapeutic foster respite home, pending a search by the Department for a more appropriate home and a comprehensive assessment of the child's needs. The Department then selected another psychologist who, because of the risk of M.W. running away, recommended placement in a "supportive, but locked residential environment wherein he will be able to develop relationships with others and can participate in family therapy."
On September 23, 1998, at a hearing without the taking of sworn testimony, the court, over the objection of counsel for M.W., ordered that M.W. be placed in the facility from which he now seeks relief by his petition for writ of habeas corpus. In our original opinion we agreed with M.W. that he could not be involuntarily placed in this facility without a Baker Act hearing complying with Chapter 394, Part I, The Florida Mental Health Act or Chapter 393. We came to that conclusion because we were persuaded by M.W. that the following portion of section 39.407(4), Florida Statutes (1997) was applicable.
The judge may also order such child to receive mental health or retardation services from psychiatrist, psychologist, or other appropriate service provider. If it is necessary to place the child in a residential facility for such services, then the procedures and criteria established in s. 394.467 or chapter 393 shall be used, whichever is applicable.
In concluding that section 39.407(4) was applicable, we relied on our prior decision in In the Interest of L.W., 615 So.2d 834 (Fla. 4th DCA 1993).
In the Department's motion for rehearing, the Department asserts that this is not an involuntary commitment and that L.W. is inapplicable because it is distinguishable on its facts. In L.W., as in the present case, the child was in the custody of the Department as a result of a dependency order. In L.W., though, it was not the Department which sought residential treatment for L.W., but rather the court had directed it over the objection of the Department. In the present case, it is the Department which has initiated the residential treatment, and the court agrees with the Department. This is a significant difference.
Unlike L.W., the present case requires us to decide whether a Baker Act hearing is necessary when a child has been committed to the temporary legal custody of the Department of Children and Family Services, and the Department is seeking the residential treatment. Reading chapters 394 and 39 together, we now conclude that this was not an involuntary commitment requiring a Baker Act hearing.
Chapter 394 authorizes voluntary admissions to a mental health facility, without the necessity of a hearing, for "any person age seventeen or under for whom such application is made by his or her guardian." § 394.4625(1)(a). The term "guardian" includes "a person appointed by a court to act on behalf of a ward's person if the ward is a minor." § 394.455(11). When a child has been declared dependent and the court has committed the child to the temporary legal custody of the Department, that commitment "invests in the department all rights and responsibilities of a legal custodian." § 39.508(9)(a)7, Fla. Stat. (Supp.1998).
The rights and responsibilities of the Department as custodian are explained in section *969 39.01(70), Florida Statutes (Supp.1998), which provides:
"Temporary legal custody" means the relationship that a juvenile court creates between a child and an adult relative of the child, legal custodian, or caregiver approved by the court, or other person until a more permanent arrangement is ordered. Temporary legal custody confers upon the custodian the right to have temporary physical custody of the child and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, and education, and ordinary medical, dental, psychiatric, and psychological care, unless these rights and duties are otherwise enlarged or limited by the court order establishing the temporary legal custody relationship. [emphasis added].
The Department, as custodian of a dependent child, thus has the authority and duty to provide many of the same things that a parent or guardian provides, without court approval, including medical care. Section 39.01(70) limits that care, though, to "ordinary medical, dental, psychiatric, and psychological care," unless that authorization is enlarged by court order. Placing a child in a locked mental health facility is not "ordinary," in our opinion. Court approval is therefore necessary before such treatment can be administered to a dependent child, but that approval is pursuant to Chapter 39, not the Baker Act.
Chapter 39 does not specifically explain, like the Baker Act does, what must be demonstrated in order to obtain court approval for this treatment. Unlike the judge in a Baker Act case, though, the juvenile court judge has an ongoing relationship with the child. Section 39.601(3)(b), Florida Statutes (Supp.1998) requires the Department to develop a case plan for each child, which must include a "description of the type of home or institution in which the child is to be placed." That case plan must be approved by the court, section 39.603, and judicially reviewed on a regular basis. § 39.701, Fla. Stat. (Supp. 1998). It may be amended at any time to meet the needs of the child. §§ 39.601(9)(f) and 39.603(2), Fla. Stat. (Supp.1998).
M.W. argues that no testimony was taken at the last hearing before the order approving his placement. What he overlooks is that, consistent with the statutory scheme, there had been a number of prior hearings involving M.W.'s mental problems. There were several psychiatric and psychological reports considered by the court, and his placement was considered by a Family Services Planning Team and a Case Review Committee. Florida Rule of Juvenile Procedure 8.340 permits the juvenile judge to rely on evidence, such as reports, which may not be admissible in non-juvenile proceedings. See also § 39.701(7), Fla. Stat. (Supp.1998). We are satisfied that the court did not abuse its discretion in concluding that this nonordinary residential placement was "consistent with the child's best interests and special needs." § 39.701(7)(g), Fla. Stat. (Supp.1998).
We grant the Department's motion for rehearing and deny habeas corpus relief.
GUNTHER and GROSS, JJ., concur.