[Nos. 48069-9, 48421-1. En Banc. April 29, 1982.]

PIERCE COUNTY OFFICE OF INVOLUNTARY COMMITMENT, *Respondent*, v. WESTERN STATE HOSPITAL, *Appellant*.

KING COUNTY, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL, *Appellants*.

*Kenneth O. Eikenberry, Attorney General,* and *Karen McCarty Lundahl* and *David R. Minikel, Assistants,* for appellants.

*Don Herron, Prosecuting Attorney,* and *Jill Guernsey Walter, Deputy,* for respondent Pierce County.

*Norm Maleng, Prosecuting Attorney,* and *Richard W. Elliott, Senior Deputy,* for respondent King County.

ROSELLINI, J.—These cases are before the court for direct review of writs of mandamus issued to Western State Hospital and the Department of Social and Health Services, requiring them to accept for evaluation persons presented to Western State Hospital by mental health professionals, pursuant to RCW 71.05.150(2). It is the position of the appellants that the hospital is not obliged to accept patients if all of the beds in the evaluation and treatment facility are occupied. The question is governed by statute.

Under RCW 71.05.020(16),

"[e]valuation and treatment facility" means any facility which can provide directly, or by direct arrangement with other public or private agencies, emergency evaluation and treatment, outpatient care, and short term inpatient care to persons suffering from a mental disorder, and which is certified as such by the department of social and health services: *Provided,* That a physically separate and separately operated portion of a state hospital may be designated as an evaluation and treatment facility: *Provided further,* That a facility which is part of, or operated by, the department of social and health services or any federal agency will not require certification: *And provided further,* That no correctional institution or facility, or jail, shall be an evaluation and treatment facility within the meaning of this chapter.

RCW 71.05.150(2) provides:

> (2) When a mental health professional designated by the county receives information alleging that a person, as the result of a mental disorder, presents an imminent likelihood of serious harm to himself or others, or is in imminent danger because of being gravely disabled, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the person or persons providing the information if any, the mental health professional may take such person, or cause by oral or written order such person to be taken into emergency custody in an evaluation and treatment facility for not more than seventy–two hours as described in RCW 71.05.180.

A third provision governing this controversy is RCW 71.05.170. In pertinent part, it reads:

> Whenever the designated county mental health professional petitions for detention of a person whose actions constitute a likelihood of serious harm to himself or others, or who is gravely disabled, the facility providing seventy–two hour evaluation and treatment must immediately accept on a provisional basis the petition and the person. The facility shall then evaluate the person's condition and admit or release such person in accordance with RCW 71.05.210.

As a facility operated by the Department of Social and Health Services, Western State Hospital is exempt from the requirement of certification. It has designated a unit containing 52 beds as an evaluation and treatment facility. The staff which it provides in that unit can properly serve only that number of patients at any one time. There are seven additional wards in the adult psychiatric unit, with a 217–bed capacity, for the treatment of persons involuntarily committed under RCW 71.05 for 90– or 180–day treatment of mental illness. Admission of persons beyond the stated capacity of any of the wards jeopardizes the physical safety of patients and staff and adversely affects the hospital's ability to adequately treat its patients.

Western State Hospital is an accredited hospital and is in danger of losing both its accreditation and Medicare certifi-

cation because of loss of adequate staff–patient ratios. Pursuant to an admissions control policy which was established in 1981, the evaluation and treatment center would not admit patients beyond its 52–bed capacity in the absence of a court order. These mandamus actions were brought to obtain comprehensive orders that would eliminate the necessity of applying to the court each time a patient is rejected.

Western State Hospital serves patients from 22 counties. There are 21 certified facilities in the area, in addition to the one at Western State Hospital. Both Pierce and King Counties have pursued a policy of applying to Western State Hospital only if all of the beds in local facilities are filled. In neither county have mental health professionals sought court orders to compel local facilities to accept patients beyond their capacity. It is not disputed that such overcrowding would create the same kinds of problems which confront Western State Hospital when it must accept patients for whom it has neither adequate staff nor beds.

The statutes we have quoted plainly mandate that Western State Hospital, as a "facility providing seventy–two hour evaluation and treatment", accept all petitions for detention, as well as the persons on whose behalf the petitions are submitted.

RCW 71.05.150 gives the mental health professional discretion in deciding (1) whether to detain a person who qualifies for detention under that section and (2) which evaluation and treatment facility he will petition for detention of the person. Since his "jurisdiction" is confined to the county employing him, we can perceive in the statute an implied requirement that he petition only facilities which are within the county or which are provided by the State to serve the county. There is nothing in the statute which requires him to utilize one of these rather than another. No distinction is made between state and local, public or private facilities. For aught that is revealed in the statute, no thought was taken by its drafter (or the drafters of the regulations passed pursuant to RCW 71.05.540,

requiring the department to establish standards to be met by a public or private facility certified as an evaluation and treatment center) of the possibility that a particular facility might be called upon to exceed its capacity; and so there are no directions as to the proper procedure to follow in that event.

At the same time, such a facility is defined in RCW 71.05.020(16) as one which "can provide . . . emergency evaluation and treatment, outpatient care, and short term inpatient care to persons suffering from a mental disorder" and which is certified. WAC 275-55-280(3)(b) defines "[e]mergency service for involuntary clients" as "the provision of immediate therapeutic intervention in cases involving involuntary clients." It provides that such service shall have the ability to respond immediately to clients and to admit clients on a 24-hour per day, 7-day per week basis, and provides in some detail the kind of services that must be immediately available. It provides that the facility must have the ability to detain dangerous individuals. Presumably the State's own institutions are expected to meet these standards, even though certification is not required.

Also, RCW 71.05.360(2) gives all persons detained or committed pursuant to the involuntary treatment act the right to adequate care and individualized treatment.

It should be obvious that every such facility has a capacity beyond which it cannot perform these functions—at least not "immediately". Yet nothing is said in the statute or regulations about capacity.

It is suggested that in spite of the clear language of RCW 71.05.170, the court should find in these provisions an implied condition that the facility where admission is sought must be able to give the patient the care required by the statute and regulations.

However, to alleviate the problem for the state hospital in this way only creates a further dilemma. If a detainee is not committed, what is to be done with him? When there is a surplus of patients over the capacity of all available facilities, must a person be left in the streets, posing a danger to

himself and others, because of the lack of facilities?[1] Under RCW 71.05.020, there is no authority to commit a detainee to a jail, which is not an appropriate environment in any event. The only alternative appears to be to overcrowd the institutions. This is the result dictated by RCW 71.05.170.

The problem here is very similar to that which confronted a penal institution in *Clark Cy. Sheriff v. Department of Social & Health Servs.,* 95 Wn.2d 445, 626 P.2d 6 (1981). In that case this court found it to be the legislative intent that the correctional institution at Shelton should receive all male persons convicted of a felony and committed by the superior court to the reception center for classification and placement, regardless of overcrowding at that institution. That opinion was based (1) upon the language of RCW 72.13.150 which used the words "shall receive" (words which we said were "presumptively" mandatory), (2) upon this court's holding in *January v. Porter,* 75 Wn.2d 768, 453 P.2d 876 (1969) that upon the pronouncement of sentence legal authority over the defendant passes to the Department of Social and Health Services and the Board of Prison Terms and Paroles, from which holding it was concluded that the duty to receive the convict arose as of the time the conviction was entered, (3) upon a finding that other statutes modifying the duty did not encompass the

---

[1]An incident described in the record of the Pierce County case is illustrative of this dilemma:

On the evening of June 4, 1981, Western State Hospital's female evaluation and treatment ward was filled to capacity, with 27 female patients and 1 male patient whose condition required care not available in the male ward. David Stewart, Pierce County mental health professional designee, contacted Western State Hospital by telephone at about 10:45 p.m. He was told that there was no bed available and that a woman he proposed to bring to the facility, a former mental patient, would have to be placed on a waiting list. This woman had turned on all the gas outlets on the kitchen stove in her duplex apartment and would not come out of the apartment. The fire department had to evacuate the building. The neighbors feared an explosion or fire, and it also appeared that the woman was in danger of serious injury. Forcible entry was necessary to rescue her. Stewart went to Judge Brown's house and secured an order requiring Western to admit her. At about 2:30 that morning, the doctor on duty moved a patient from the evaluation ward to another facility of the hospital and secured a bed for the detainee.

circumstances of that case, and (4) upon a further finding that the superintendent's discretionary powers were not broad enough to allow him to reject convicted felons.

This court in that case did not hold the word "shall" to be conclusively mandatory but only presumptively so, and looked to other statutes and case law to see whether other provisions modified that meaning.

In this case, the statutory language is much stronger. The facility "must" receive the person offered upon petition, and it must do so "immediately". However, the circumstances and the legislative intent are more ambiguous. There, the person to be confined was a convicted felon, and there was no question but that he was to be confined somewhere, at least until dealt with by the Board of Prison Terms and Paroles. The question was, which of two facilities had the duty to house the felon? Here, there has been no order of commitment. The mental health professional has discretion whether to take a person under investigation into emergency custody in an evaluation and treatment center (RCW 71.05.150(2)). Nevertheless, it must be presumed that he will exercise that discretion in good faith, and that when he takes such a person into custody, he is satisfied that the person is indeed dangerous to himself or others or is gravely disabled. While there is not the compelling necessity of confining a mentally disturbed person that exists with respect to a sentenced felon, the public policy favoring evaluation and treatment of such persons is a strong one. This court cannot lightly say that the Legislature intended that such persons receive no treatment at all, rather than to overcrowd the available facilities. Treatment delayed and inadequate must surely be better than no treatment at all.

Statutory provisions referred to above clearly reflect a legislative intent that the treatment given pursuant to this act be adequate. There was a comparable legislative intent evidenced in *Clark County*. There was overcrowding in that case also and inadequate evaluation of prisoners, but we did not allow this to alter the plain meaning of the legisla-

tive provision. The institution, this court said, "can do only the best it can with the means at hand." *Clark County*, at 450. We find insufficient material differences between this case and *Clark County* to warrant a different result.

The department points to RCW 71.05.100, which makes the county responsible for costs of care for persons who are themselves unable to pay, if they are treated in a facility other than one maintained by the Department. It suggests that this provision makes the county primarily responsible for treatment. That theory is not sustained when this section is read together with other pertinent provisions. RCW 71.05.550 and 71.24 both provide for substantial state aid to the counties in meeting the financial burdens imposed by statutes requiring them to provide mental health care. This would appear to be a recognition that the function is primarily a responsibility of the State. No constitutional provision has been found which requires counties to assume the duty of providing care for the mentally ill, although it is no doubt within their police power to do so. On the other hand, Const. art. 13, § 1 provides in part:

> Educational, reformatory and penal institutions; those for the benefit of blind, deaf, dumb, or otherwise defective youth; for the insane or idiotic; and such other institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be provided by law.

This court has said that the provision does not require that all funds supporting such institutions come from the State. *Duffy v. Department of Social & Health Servs.*, 90 Wn.2d 673, 677, 585 P.2d 470 (1978). It has also said that the provision allows the Legislature much discretion in determining the sort and nature of illness or infirmity to be treated, as well as the method and extent of financial support which the State is to provide. *State v. Pierce Cy.*, 132 Wash. 155, 231 P. 801, 46 A.L.R. 594 (1925).

We need not decide here, however, whether a statute which placed the entire burden of caring for the mentally ill upon local governments would pass constitutional muster.

The Legislature has not seen fit to enact such legislation, and it is sufficient to say that the laws which it has passed require the evaluation and treatment center at Western State Hospital to accept all petitions and persons presented by county mental health professionals within its allotted area, whether or not such acceptance will overtax the institution's facilities.

A challenge is made to the standing of the counties and the mental health professionals to bring this action. We are satisfied that both the counties' duty to provide for the welfare of their citizens and the statutory duties of the mental health professionals give them standing to seek the relief which is granted here.

It is also suggested that other evaluation and treatment facilities within the counties are necessary parties to this action. While the duties of such facilities are prescribed by the same statute, it is not necessary that they be present in court in order to determine the duties of Western State Hospital and the department. The fact that other institutions may have a similar statutory duty in no way diminishes the duty of the appellants here, under the statutes as they presently stand.

As the Pierce County Superior Court observed, much as the courts may sympathize with the institutions which have to bear the frustration and discomforts of overcrowding, and the patients who go untreated or poorly treated, the problem is one which can be solved only by the Legislature, as it is one of providing for the creation and funding of adequate facilities.

The orders are affirmed upon the grounds stated herein.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.