704 So.2d 1123 (1998)
DEPARTMENT OF JUVENILE JUSTICE, Appellant,
v.
C.M., a child, Appellee.
No. 97-0847.
District Court of Appeal of Florida, Fourth District.
January 21, 1998.
*1124 Alan R. Dakan, Tallahassee, for appellant.
Lynne K. Hennessey of Lynne K. Hennessey, P.A., Boca Raton, for appellee.
WARNER, Judge.
The trial court ordered the Department of Juvenile Justice ("DJJ") to pay for services rendered by Columbia Hospital to a juvenile evaluated in the hospital pursuant to court order and over the objections of DJJ. We reverse since the trial court cannot order DJJ to pay the hospital bill.
The facts essential to this decision are as follows. This case began as a Baker Act proceeding to determine the competency of the juvenile, C.M. When C.M. was scheduled for release from the hospital to her parents, they refused to pick her up as they were trying to obtain state assistance for her. At the suggestion of a court commissioner, the parents initiated a shelter petition pursuant to Chapter 39, Part IV, Florida Statutes (1995), which is commonly referred to as CINS/FINS (Child in Need of Services/Families in Need of Services). The CINS/FINS statute encompasses children and families in need of services, providing them primarily with counseling and medical, psychiatric and psychological services. See § 39.42, Fla. Stat. (1995). The CINS/FINS procedure focuses on "a continuum of increasing level of intensity and participation by the parent and child." Id. This is in stark contrast to other juvenile proceedings under Chapter 39, Florida Statutes, namely delinquency and dependency proceedings, where the statutory schemes aim at placing the child in a shelter or like facility.
In their petition the parents alleged that C.M. was beyond their control despite their efforts to get her professional help.[1] After reviewing the petition, the trial court found that there was probable cause to believe that C.M. was a CINS and ordered her placement in the custody of DJJ. The court extended the shelter order at a subsequent hearing. After this hearing, DJJ did not initiate a petition to establish the child's CINS/FINS status, as is contemplated in the statutory scheme. See § 39.436, Fla. Stat. (1995). DJJ contended that the child did not constitute a CINS because she had a pending juvenile delinquency proceeding, which would disqualify her from CINS status. See § 39.01(1), Fla. Stat. (1995). Moreover, because C.M.'s parents wanted nothing to do with her, they did not qualify for services under the act, as its purpose is the reunification of families.
C.M.'s parents filed a motion to require DJJ to file a petition, despite DJJ's objections. The trial court, believing that DJJ had "dropped the ball," threatened the agency with contempt unless a petition was filed. Nevertheless, DJJ persisted in refusing to file the petition since neither the child nor the family qualified for services. Despite the absence of a petition from DJJ, the court conducted a hearing to determine whether C.M. was eligible for CINS treatment, found her in need of services and ordered her placement "in a staff secured facility for no longer than five days for the purposes of evaluation and assessment." In its written order, the trial court ordered that C.M. be taken to Columbia Hospital for the evaluation and that DJJ file a CINS/FINS petition.
After five days elapsed, the parents filed an emergency motion to continue the shelter *1125 for C.M. and again requested that DJJ be compelled to file a petition for CINS status for C.M. In response, the trial court issued an order stating that C.M. was to remain in DJJ's custody and ordering the agency to place her in a secure supervised environment. As a result, C.M. remained at Columbia for over two weeks.
Some eight months later, Columbia moved for payment of the amount owing, which resulted from the services it had provided to C.M. At the hearing on the motion, DJJ presented evidence as to DJJ's expenditures on and appropriations to the CINS/FINS cases and noted that money was not available for this case. Nevertheless, the trial court ordered DJJ to pay the $20,000 bill with a right of indemnity from C.M.'s parents. DJJ appeals from this order.
Although there are a myriad of problems with the proceedings in the court below, we need only address the issue of whether, despite the defective nature of the judicial proceedings, the trial court could order DJJ to pay the Columbia bill. While there are no cases addressing the trial court's authority to order payment of expenses incurred in CINS/FINS proceedings, it has been held in other proceedings under Chapter 39 that the court cannot direct a particular placement for a child and order the expenditure of funds for such placement by an executive agency. See Department of Health and Rehabilitative Servs. v. State, 616 So.2d 91, 92 (Fla. 5th DCA 1993); Department of Health and Rehabilitative Servs. v. V.L., 583 So.2d 765, 766 (Fla. 5th DCA 1991). In this case, DJJ proved at the hearing that it had no appropriated funds to pay for this expense. Thus, the order requiring it to pay the expense interferes with both legislative discretion in determining the funds required of an agency and executive discretion in spending those appropriated funds, in derogation of the doctrine of separation of powers. See Department of Health and Rehabilitative Servs. v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991); In Interest of N.W., 506 So.2d 80, 81 (Fla. 1st DCA 1987). These cases apply as equally to the DJJ and its administration of appropriated funds under CINS/FINS as to the former Department of Health and Rehabilitative Services and its duties under juvenile dependency proceedings.
While section 39.424(3), Florida Statutes (1995), provides that the DJJ must inform parents of a child in need of services that they are responsible for the costs of the services provided by the DJJ to the extent of their ability to pay, thus implying a duty on behalf of DJJ to pay for expenses, in this case DJJ did not provide any services. In fact, it maintained that because the child and her family did not qualify, it had no obligation to do so.
Under CINS/FINS, the parents continue to be primarily responsible for the care and support of their children. See §§ 39.422(7), 39.424(3), 39.439(11), Fla. Stat. (1995). Here, there was no showing that C.M.'s parents should not be responsible for their child's care or that they were unable to pay for her care. In fact, in their "emergency motion" to continue C.M. at Columbia, the parents asserted that they needed the court to rule on her continued shelter at Columbia because they had plans to depart on a "non-refundable vacation" the next day. This does not show financial inability to shoulder what is their responsibility to their child.
For these reasons we reverse the order of the trial court ordering DJJ to pay Columbia Hospital's bill. The parents are responsible for this expense which was incurred at their insistence for their child.
KLEIN, J., and PARIENTE, BARBARA J., Associate Judge, concur.
NOTES
[1] We note that section 39.436(2), Florida Statutes (1995), provides that the DJJ "shall file a petition for a child in need of services if the family, child, case manager, member of the case staffing committee, or family mediator requests that a petition be filed...." This section was amended in 1996 to provide that the DJJ must file a petition at the request of the case manager or case staffing committee only. See § 39.436(2), Fla. Stat. (Supp.1996). Thus, under the new statutory scheme, the parents would no longer have standing to even petition for CINS/FINS status for C.M.