GROSS, J.
The issue in this case is whether a sheriff is entitled to bring a writ of mandamus to recover expenses from the Department of Children and Families (the Department) when that agency fails to place or take custody of an incarcerated, incompetent criminal defendant after the fifteen-day period described in section 916.107(l)(a), Florida Statutes (2001). We hold that mandamus will not support the recovery of such expenses and affirm.
This case began with five criminal defendants determined to be incompetent to proceed, either because of mental retardation, pursuant to sections 916.106(12) and 916.302, Florida Statutes (2001), or mental illness pursuant to sections 916.106(11) and 916.12, Florida Statutes (2001). The trial court committed all five defendants to the Department for placement in a treatment facility.
On March 19, 2001, the five defendants separately filed emergency petitions for writs of habeas corpus seeking release from the Palm Beach County Jail on the ground that each was being illegally detained, because the Department had failed to take custody of them within fifteen days of commitment as mandated by section 916.107(l)(a). Alternatively, each defendant asked the trial court to issue a writ of mandamus to compel the Department to secure their placement in a treatment facility.
The Sheriff of Palm Beach County, Ed Bieluch, responded to the petitions, arguing that his office should not bear any financial responsibility for housing or caring for the defendants after the expiration of the fifteen-day period. The Sheriff cross-petitioned against the Department for a writ of mandamus (1) requiring the Department to immediately assume care of the defendants, (2) awarding attorney’s fees and costs under section 57.105, Florida Statutes (2001), and (3) forcing the Department to reimburse the Sheriff for all monies expended on housing and caring for the defendants, from the expiration of the fifteen-day period until their removal by the Department.
On March 28, 2001, the trial court conducted a consolidated evidentiary hearing on the defendants’ petitions. The Department presented evidence demonstrating that it did not have the available bed space to house either the mentally retarded or the mentally ill defendants, largely due to the lack of funding by the legislature. The Sheriff argued that the Department had failed to request additional funding for more bed space; that it had enough space to add beds; and that the Department was well aware of its statutory duty to add additional beds.
On March 30, 2001, the trial court denied the defendants’ petitions for writs of habeas corpus and granted their request for a writ of mandamus against the Department. Relying on Miller v. Carson, 524 F.Supp. 1174 (M.D.Fla.1981), and Pierce County Office of Involuntary Commitment v. Western State Hospital, 97 Wash.2d 264, 644 P.2d 131 (1982), the trial court concluded that the lack of bed space did not justify the Department’s refusal to take custody of the defendants.
The trial court rejected the Department’s argument that it could not comply with such an order. The court concluded that it was possible to expand bed space; that the Department had chosen not to budget funds to build room for bed expansion; that the Department had not exhausted its mental health budget for the fiscal year; that the Department was able to seek emergency funding; and that the Department had shown only that it was inconvenient or impractical for it to assume custody of the defendants.
*281 Thus, the Department was ordered to immediately advise the Sheriffs Office where to deliver the defendants, and that if the Department failed to do so, the Sheriffs Office would deliver the defendants to the Florida State Hospital in Chattahoochee on April 2, 2001.
The Department immediately moved for an emergency stay of the order pending appeal. However, since it was able to place each defendant in a treatment facility, it did not appeal the trial court’s order.
On May 17, 2001, the trial court held a hearing on the Sheriffs cross-petition for writ of mandamus seeking attorney’s fees and costs, and “reimbursement” for the cost of housing and caring for the defendants from day sixteen until the day the Department assumed custody of the defendants.
On May 24, 2001, the trial court denied the Sheriffs request for reimbursement. It held that ordering reapportionment of funds from the Department to the Sheriff would infringe upon the legislature’s exclusive authority to appropriate funds. Relying on Miller, the court also ruled that regardless of the term used to define such a transfer, “the remedy sought by Sheriff Bieluch is in essence a request for monetary damages” which lacked any statutory authorization.
We affirm the ruling of the trial court.
Mandamus is a narrow remedy which does not allow a court to reach into the legislative sphere and reallocate funds between local and state governments. As the supreme court has written:
Florida law is well settled that mandamus may be used only to enforce a right that is both clear and certain. Mandamus may not be used to establish the existence of such a right, but only to enforce a right already clearly and certainly established in the law.
Fla. League of Cities v. Smith, 607 So.2d 397, 400-01 (Fla.1992) (citations omitted).
The Sheriffs right to reimbursement is neither clear nor certain. As the Department points out, Chapter 916 “establishes no rights in the Sheriff,” but protects committed defendants’ rights as delineated in Chapter 916. The Sheriff cites no statute that clearly authorizes the type of relief he seeks.
We agree with the trial court’s reliance on Miller, which rejected a request by various cities for money damages from the Department for expenses incurred as a result of the Department’s failure to meet its responsibility to take custody and care for prisoners who had been declared mentally incompetent to stand trial. 524 F.Supp. at 1182. Miller held that the doctrine of sovereign immunity barred the cities’ request for damages. The court wrote:
Article X, Section 13 of the Florida Constitution incorporates the common law doctrine of sovereign immunity, authorizing the state to waive immunity by general law if it so desires. The legislature accepted this invitation by enacting [section 768.28, Florida Statutes (1979)], which permits persons to sue the state for any tort committed by an employee of a state agency or subdivision while acting within the scope of his employment.
A reading of Section 768.28 leads the Court to the conclusion that the Florida Legislature did not intend the statute to encompass actions for injuries sustained by a municipality as a result of acts or omissions attributable to a state agency. Rather, the statute focuses upon more mundane types of torts, i.e., those causing property damage, personal injury or wrongful death. That this is true is apparent from ... Section 768.28(1), *282 which provides that the state shall be liable only if a private person would be liable under the same circumstances in accordance with the general law of the state. Obviously, there is no set of facts under which a private person could be liable to the City Defendants for refusing to take custody of mentally incompetent inmates committed to [the Department].
With the exception of Section 768.28, there is no provision of Florida law that would even arguably confer authority upon this Court to award money damages to the City Defendants.
Id. at 1182.
The Sheriff tries to avoid the sovereign immunity aspect of Miller by describing the requested relief not as “damages,” but as a “reimbursement” or “recovery” of expenses, an exercise that recalls George Orwell’s description' of words that fall “upon the facts like soft snow, blurring the outlines and covering up all the details.” GeoRge ORWell, Politics and the English Language, in Inside The Whale 143, 153-54 (1957). For the purpose of applying sovereign immunity, there is no distinction between the “damages” sought in Miller and the “reimbursement” or “recovery” of expenses pursued in this case.
Finally, the relief sought by the Sheriff violates the separation of powers doctrine. It is not the role of the judiciary to juggle the books of government agencies. An order requiring the Department to reimburse the Sheriff would interfere “with both legislative discretion in determining the funds required of an agency and executive discretion in spending those appropriated funds....” Dep’t of Juvenile Justice v. C.M., 704 So.2d 1123, 1125 (Fla. 4th DCA 1998); see also Dep’t of Children & Family Servs. v. Birchfield, 718 So.2d 202 (Fla. 4th DCA 1998) (holding that the “trial court violated the separation of powers doctrine in considering the [Department’s] ability to move funds in order to comply with its mandate”); Dep’t of Health & Rehabilitative Servs. v. State, 593 So.2d 328 (Fla. 5th DCA 1992) (observing that “it is not the judiciary’s role to revise legislative appropriations”).
AFFIRMED.
MAY, J., and DAMOORGIAN, DORIAN, Associate Judge, concur.