IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA
DEPARTMENT OF
FINANCIAL SERVICES,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Appellant,

CASE NO. 1D13-5743

v.

LISA O'CONNOR, F/K/A LISA
ZANE,

Appellee.

_____/

Opinion filed January 20, 2015.

An appeal from the Circuit Court for Alachua County.
James P. Nilon, Judge.

Paul C. Stadler, Jr., Assistant General Counsel, Tallahassee, for Appellant.

Michael Farrar, Miami, for Appellee.

MAKAR, J.

Unclaimed property and an unpaid judgment collide in this marital dissolution case. At issue is whether a judgment for unpaid child support and marital proceeds can form the basis for obtaining ownership of funds held as unclaimed property by the State.

I.

The marriage of Lisa O'Connor and Nabeel Zane was dissolved on October 17, 1996. Nearly seven years later, the trial court entered a post-dissolution final judgment dated August 28, 2003, ordering Zane to pay O'Connor $2,050.80 per month in child support, half of the proceeds from the sale of the marital home ($67,939.63), and half of the proceeds from the sale of a Disney timeshare ($8,124.00). After seven more years passed, the trial court certified on October 14, 2010, that Zane had failed to pay court-ordered support payments into the depository, resulting in an arrearage balance of $177,860.40. Within a few months, O'Connor filed a judgment lien against Zane in this amount.

On February 11, 2011, O'Connor filed a motion for declaration that she was entitled to the approximately $32,430.79 of funds held in several accounts by the Bureau of Unclaimed Property of the Department of Financial Services ("Department") with Zane listed as the owner; Zane, we are told, has fled the country to the Middle East. The Department intervened and moved to dismiss, contending that the circuit court lacked jurisdiction because O'Connor had not exhausted administrative remedies available to her to seek funds under the Department's control. The court granted the Department's motion and this Court affirmed with a written opinion. O'Connor v. Zane, 79 So. 3d 105 (Fla. 1st DCA 2012) [O'Connor I]. In its concluding paragraph, the Court noted that:

2

> [I]f Ms. O'Connor files a claim under section 717.124, the department must determine whether it is in possession of unclaimed property belonging to Mr. Zane, and if the property consists of cash, it must state the amount. Ms. O'Connor may then obtain legal process or pursue judicial remedies, if necessary, to execute her judgment against the property.

79 So. 3d at 106. Armed with this Court's opinion, O'Connor immediately filed an amended judgment lien against Zane, and a writ of execution was delivered to the Leon County Sheriff, who was instructed to find Zane and seize his assets.

A year later, on May 28, 2013, O'Connor filed a claim with the Department seeking Zane's unclaimed property pursuant to section 717.124, Florida Statutes. In response, the Department issued a "Notice of Intent" finding that only Zane—not O'Connor—was entitled to the unclaimed property. On June 26, 2013, the Department issued a Final Order denying O'Connor's claim.

Having exhausted administrative remedies, O'Connor filed a writ of garnishment under section 77.049 for Zane's unclaimed funds, which the Department moved to dismiss and dissolve on sovereign immunity grounds. After a hearing on the motion, the trial court entered an order denying it. The ruling was based on its statements at the hearing that: O'Connor I was persuasive, even if dicta, as to O'Connor's legal rights; section 61.12, Florida Statutes, waived sovereign immunity for purposes of garnishing the unclaimed property; a one-time transfer of the unclaimed property did not add much work for the State compared with ongoing garnishments; unclaimed funds were much like bank accounts that

3

can be transferred; and public policy favored the result reached. This appeal followed.

## II.

The central focus of this appeal is whether sovereign immunity bars O'Connor from reaching the unclaimed funds at issue. The Department contends that neither the garnishment statute, section 61.12, nor the unclaimed property statute, section 717.124, clearly and unequivocally waive sovereign immunity for the purposes of allowing judgment creditors to reach such funds. O'Connor counters that the purpose of section 717.124 is to return unclaimed property to its owner. Accordingly, she asserts that her equitable and legal claim of ownership over the funds arising from the judgment lien and writ of execution entitles her to the unclaimed funds of her former spouse. She argues that sovereign immunity is not implicated because the State is merely a custodian of the property in the unclaimed funds accounts, not the title holder or owner of the accounts. Alternatively, even if sovereign immunity were implicated, section 61.12 waives sovereign immunity for her garnishment of the accounts. Finally, O'Connor argues that the Department's position violates the law of the case, set forth in O'Connor I.

In reply, the Department again emphasizes that no clear and unequivocal waiver of sovereign immunity has been shown, arguing that the trial court erred in finding that section 61.12 does so. Allowing the garnishment statute to waive

4

sovereign immunity for purposes other than wages, it asserts, would disrupt administrative processes by subjecting the Department to judgment creditors seeking funds in unclaimed property accounts. As to O'Connor I, it is not law of the case because the statements that O'Connor and the trial court rely upon are dicta.

A.

The disposition of unclaimed property is the subject of Chapter 717, Florida Statutes. Section 717.1201(1) states that once unclaimed property is paid to or delivered to the Department, the "state assumes custody and responsibility for the safekeeping of property." A person attempting to claim such property must turn to section 717.124, which provides: "Any person, excluding another state, claiming an interest in any property paid or delivered to the department under this chapter may file with the department a claim . . . ." Further, section 717.101(18) defines "owner" for purposes of unclaimed property as, among other things, "a person having a legal or equitable interest in property subject to this chapter . . . ."

In O'Connor I, this Court held that O'Connor had not exhausted her administrative remedies because she did not file a claim with the Department pursuant to Chapter 717. Affirming dismissal for that reason, this Court noted:

> The statutes dealing with disposition of unclaimed property in Chapter 717, Florida Statutes, do not authorize the department to determine the priority of claims that could be asserted by judgment creditors against unclaimed property in its possession. See Martin

> Young Private Investigative Agency, Inc. v. Department of Banking and Finance, 659 So. 2d 410 (Fla. 1st DCA 1995). However, a judgment creditor does have standing to assert a claim against unclaimed property in the hands of the state in order to obtain a determination that the property does in fact belong to the judgment debtor.
>
> Accordingly, if Ms. O'Connor files a claim under section 717.124, the department must determine whether it is in possession of unclaimed property belonging to Mr. Zane, and if the property consists of cash, it must state the amount. Ms. O'Connor may then obtain legal process or pursue judicial remedies, if necessary, to execute her judgment against the property.

79 So. 3d at 106. The Department has since determined that the unclaimed property belonged to Zane, not O'Connor. As a result, the Department denied O'Connor's claim to the funds. O'Connor then sought "judicial remedies . . . to execute her judgment against the property," id., which the Department resisted below and continues to resist in this appeal, claiming sovereign immunity.

The primary purpose of Chapter 717, however, is to return unclaimed property to its owners. Because Zane reneged on his legal obligations to pay O'Connor, and has failed to claim property held in the custody of the State, he forfeited his ownership interest. The trial court's order below functions as a determination that the Department, as custodian, is relieved of its obligation to hold the funds for Zane.[1] Further, the trial court's orders throughout the post-

---

[1] Although the normal course would have been for O'Connor to appeal the Department's ownership determination, her actions are permissible under the law of the case set forth in O'Connor I, 79 So. 3d at 106.

dissolution period establish that O'Connor's rights trump Zane's ownership interest in the unclaimed accounts. These orders have given O'Connor "legal or equitable interest in the property" under section 717.101(18). Under these circumstances, where the State is acting in a custodial capacity, sovereign immunity does not bar her from claiming and obtaining legal ownership of what she is due. Consistent with O'Connor I and the post-dissolution orders throughout O'Connor's plight, her claim to the unclaimed funds is now final and complete.

The Department rightly points out that sovereign immunity must be clearly and unequivocally waived. The Department's theory, however, assumes this is a classic garnishment action in which a judgment creditor seeks to garnish sums, such as wages or salaries, earned by judgment debtors, which are paid by state entities. But this case is different in kind from previous sovereign immunity-garnishment cases[2] because the state entity here is a *custodian* of the judgment

---

[2] See, e.g., Hernando Cnty. v. Warner, 705 So. 2d 1053, 1054 (Fla. 5th DCA 1998) (sovereign immunity shielded county from garnishment by judgment creditor when county owed judgment debtor contractual obligation and judgment debtor an independent contractor, not employee); Metro. Dade Cnty. v. United Guar. Residential Ins. Co. of N.C., 645 So. 2d 1117, 1118 (Fla. 3d DCA 1994) (sovereign immunity barred garnishment of county employee salary because event prompting debt occurred prior to enactment of sovereign immunity waiver statute); G & J Invs. Corp. v. Fla. Dep't of HRS, 429 So. 2d 391, 391-92 (Fla. 3d DCA 1983) (sovereign immunity barred attempt to garnish Medicaid funds owed to judgment debtor by state agency); Wesley Constr. Co. v. Biscayne Constr. Inc., 341 So. 2d 786, 786-87 (Fla. 3d DCA 1977) (sovereign immunity barred attempt to garnish county, which owed money to judgment debtor); Fla. Dep't of Transp. v. Gordon Bros. Concrete, Inc., 339 So. 2d 1156, 1157 (Fla. 2d DCA 1976)

debtor's (unclaimed) property; it is not indebted in some way to Zane, the judgment debtor, for salaries or other funds it may owe him. O'Connor does not seek State funds yet to be tendered to Zane as a salary; rather, she seeks Zane's unclaimed property that the State is holding for "safekeeping" per section 717.1201(1). The trial judge correctly recognized that the funds sought are akin to bank accounts, and that the writ of garnishment here is a one-time transaction for Zane's accounts themselves, rather than an ongoing garnishment of wages or salary.

In this regard, Chapter 717 is a detailed mechanism for citizens to make claims to property held by the Department, property that is not the State's. See § 717.1201(1). The ownership dispute here is not O'Conner versus the Department—a case in which sovereign immunity would apply absent waiver. Rather, the dispute is over which spouse is entitled to assets that serendipitously landed in the Department's care. The dispute, and the Department's conservatorship over the funds, has ended.

Florida's strong public policy of treating child support arrearages differently from other debts reinforces this resolution of the matter. See Bacardi v. White, 463

---

(sovereign immunity barred attempt to garnish State, which owed money to judgment debtor); see also Palm Beach Cnty. Sheriff v. State, 854 So. 2d 278, 282 (Fla. 4th DCA 2003) (sovereign immunity barred Sherriff's action for reimbursement from State for housing defendants that were supposed to be in DCF custody).

So. 2d 218, 222 (Fla. 1985) ("This state has always had a strong public policy favoring the enforcement of both alimony and child support orders."); Evans v. Evans, 595 So. 2d 988, 990 (Fla. 1st DCA 1992) ("It is the very strong public policy of this state to require a parent to provide support for his or her children."). That the Legislature has specifically required cooperation between the Department and child support enforcement authorities in section 409.25658(1) punctuates this point: "In a joint effort to facilitate the collection and payment of past due support, the Department of Revenue, in cooperation with the Department of Financial services, shall identify persons owing support collected through a court who are presumed to have unclaimed property held by the Department of Financial Services." The statutory requirement that the Department work to "facilitate the collection and payment of past due support" with unclaimed property in its custody goes hand in glove with the trial court's conclusions. This statute facilitates child support payment when an original owner comes forward to claim his or her property, but it does not foreclose other remedies when an owner, like Zane, does not claim his property. Nothing in the statute indicates a legislative intent to keep child support unpaid unless an owner comes forward. Indeed, subsection (5) states that the statute's remedy is only "supplemental" and can be used "in conjunction with any other method of collecting support." § 409.25658(5), Fla. Stat. While subsection (5) speaks to the Department of Revenue's remedies, the overall

9

legislative intent is that artifices to the effective enforcement of child support obligations must give way.

The Department suggests to the contrary, claiming that the only permissible release of unclaimed property to pay child support is when the debtor/former spouse had filed a valid claim under this statute. But the Legislature could not have intended to deny persons in O'Connor's position—whose ex-spouses have fled the country and abandoned their property—a similar remedy. O'Connor is not required to wait for Zane to return to make a claim. What an odd result that would be, one that would create an incentive for ex-spouses to conceal their whereabouts and disengage further from the justice system.

The Department points out, as a public policy matter, that the State treasury will not get Zane's unclaimed funds if O'Connor prevails ("if Florida unclaimed property is to be remitted to 'missing owner' judgment creditors, there will be less funds available to benefit the people of the State of Florida."). But the thirst for funds for governmental purposes is unslakable, and not a recognized legal grounds to deprive O'Connor of the funds her ex-husband owes her and her family. The total proceeds from Zane's unclaimed accounts will only cover about a third of the total arrearages Zane owes O'Connor for the care of their children and the sale of their marital property. Surely the State would prefer that these private funds go directly to satisfy Zane's long-standing paternal obligations to his offspring for

their personal upbringing—which may reduce the need for government assistance or services—than be deposited into a faceless general treasury fund for indeterminate purposes. Unclaimed property may ultimately become governmental property, but that does not foreswear the government's primary obligation to return it to private hands.

In short, the Department's assertion of immunity in this case is inconsistent with its custodial function under section 717.1201(1) and the framework for claiming property under Chapter 717. Sovereign immunity is not implicated when an original owner makes and prevails on a claim for unclaimed property; likewise, it is not implicated when a superior claim of ownership to unclaimed property is established by court orders, as O'Connor has established under Chapter 717. On these grounds, the trial court's order denying the Department's motion to dismiss and dissolve was proper.

### B.

Next for review is section 61.12 which—although not a model in clarity— has been deemed sufficiently clear and unequivocal to waive sovereign immunity as to garnishment of wages. O'Connor argues that this waiver of sovereign immunity should extend to unclaimed property for which she holds a judgment. Section 61.12(1), which outlines the scope of the "monies or other things" that are subject to attachment or garnishment, states:

(1) So much as the court orders of the money or other things due to any person or public officer, state or county, whether the head of a family residing in this state or not, *when the money or other thing is due for the personal labor or service of the person **or otherwise***, is subject to attachment or garnishment to enforce and satisfy the orders and judgments of the court of this state for alimony, suit money, or child support, or other orders in proceedings for dissolution, alimony, or child support; *when the money or other thing sought to be attached or garnisheed is the salary of a public officer, state or county, the writ of attachment or garnishment shall be served on the public officer whose duty it is to pay the salary, who shall obey the writ as provided by law in other cases*. It is the duty of the officer to notify the public officer whose duty it is to audit or issue a warrant for the salary sought to be attached immediately upon service of the writ. A warrant for as much of the salary as is ordered held under the writ shall not issue except pursuant to court order unless the writ is dissolved. No more of the salary shall be retained by virtue of the writ than is provided for in the order.

(Emphasis added). This section is followed by section 61.12(2), which states:

(2) ***The provisions of chapter 77 or any other provision of law to the contrary notwithstanding***, the court may issue a continuing writ of garnishment to an employer to enforce the order of the court for periodic payment of alimony or child support or both. The writ may provide that the *salary* of any person having a duty of support pursuant to such order be garnisheed on a periodic and continuing basis for so long as the court may determine or until otherwise ordered by the court or a court of competent jurisdiction in a further proceeding. Any disciplinary action against the employee by an employer to whom a writ is issued pursuant to this section solely because such writ is in effect constitutes a contempt of court, and the court may enter such order as it deems just and proper.

(Emphases added).

Read it its entirety, section 61.12 provides a clear and unequivocal waiver of sovereign immunity for garnishment of *salaries* paid by the State; but it does not

independently contain a clear waiver of immunity for writs to garnish the accounts at issue. The language in section 61.12(1), "*when the money or other thing is due for the personal labor or service of the person **or otherwise**,*" could be read broadly to include the monies now held in the unclaimed property accounts. § 61.12(1), Fla. Stat. (emphasis added). Language that follows in subsection (1), however, is limited to "when the money or thing sought to be attached or garnished is the *salary* of a public officer, state or county . . . ." Id. (emphasis added). Further, section 61.12(2) is couched in terms of garnishment of salaries on a "periodic and continuing basis for so long as the court may determine . . . ." § 61.12(2), Fla. Stat. While it does allow for garnishment for child support, "any other provision of law to the contrary notwithstanding," id., the waiver of sovereign immunity extends only to salaries paid by the State (not the unclaimed property of third parties custodially held by the State). For this reason, section 61.12 does not provide a basis for the relief O'Connor seeks.

## III.

In conclusion, O'Connor is entitled to the unclaimed property of her former spouse to satisfy his obligations flowing from the dissolution judgment entered against him. Sovereign immunity is unavailable for the Department to continue to hold this property in its custody and deprive its rightful possessor, O'Connor, of its ownership, which has been judicially decreed.

13

AFFIRMED.

SWANSON, J., and SJOSTROM, JONATHAN E., ASSOCIATE JUDGE, CONCUR.