# Third District Court of Appeal

## State of Florida

Opinion filed April 5, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2192
Lower Tribunal No. 97-4918
_____

**Glen Cyril Yergin, as personal representative of the Estate of Richard Yergin,**
Appellant,

vs.

**Mary Georgopolos,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Bernard S. Shapiro, Judge.

Michael Farrar, for appellant.

Law Office of Shannon L. Akins, P.A., and Shannon L. Akins (Orlando); Law Office of Diane B. McWhirter and Diane B. McWhirter (Winter Park); Joseph Currier Brock (Winter Park), for appellee.

Before EMAS, LOGUE and LUCK, JJ.

LUCK, J.

Thirty-five years ago, Richard Yergin took out a life insurance policy on himself, and named as the beneficiary Mary Georgopolos, who was listed as Richard's mother. The policy and the $41,687.74 it paid out, however, were unknown to Georgopolos and Richard's family. They didn't know about the money when Richard died in 1997. They didn't know about the money when Richard's estate was probated in the circuit court the following year. And they didn't know about the money for the next decade and a half, until 2015.

By then, the insurance company had turned over the forty-one thousand dollar annuity to the Florida Department of Financial Services.[1] In 2015, when he learned about the money, Glen Yergin, Richard's half-brother, petitioned to reopen Richard's estate, appoint himself the personal representative, and for a declaration that the insurance policy annuity: (1) was a failed transfer because Georgopolos was not Richard's mother as stated on the policy; and (2) belonged as part of the estate property. Glen also served his declaratory judgment petition on ninety-two-year-old Mary Georgopolos, in Fircrest, Washington.

Georgopolos remembered Richard as a tenant in her home many years before. Richard, Georgopolos remembered, liked her cooking and left his jacket when he moved out. She made a claim for the annuity with the financial services

---

[1] "Funds held or owing under any life or endowment insurance policy or annuity contract which has matured or terminated are presumed unclaimed if unclaimed for more than 5 years after the date of death of the insured, the annuitant, or the retained asset account holder . . . ." § 717.107(1), Fla. Stat. (2015).

department, and moved to dismiss the petition, which the trial court granted. This is an appeal from the dismissal.

The issue in this appeal is whether an estate that seeks to obtain money or property delivered to the financial services department as unclaimed must first file a claim with the department, and exhaust administrative remedies, before it can file a lawsuit in the trial courts determining ownership of the property. Richard contends that the circuit court must decide first because Florida law gives it exclusive jurisdiction to determine whether property is part of an estate, Art. V, § 20(c)(3), Fla. Const.; § 86.011, Fla. Stat. (2015); id. § 733.105(1)(a),[2] but our constitution and statutes also give the financial services department jurisdiction to make determinations as to unclaimed property deposited in the state treasury, Art. IV, § 4(c); § 717.124(1), Fla. Stat. (2015).[3]

---

[2] The Florida Constitution provides that the "[c]ircuit courts . . . shall have exclusive original jurisdiction in all actions at law not cognizable by the county courts; of proceedings relating to the settlement of the estate of decedents and minors, the granting of letters testamentary, guardianship, involuntary hospitalization, the determination of incompetency, and other jurisdiction usually pertaining to courts of probate . . . ." Art. V, § 20(c)(3), Fla. Const. The declaratory judgment act provides that "the circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." § 86.011, Fla. Stat. (2015). And the probate code provides that "[w]hen property passes by intestate succession or the will is unclear and there is doubt about . . . [w]ho is entitled to receive any part of the property . . . any interested person may petition the court to determine beneficiaries or their shares." Id. § 733.105(1)(a).

[3] The Florida Constitution provides that "[t]he chief financial officer shall serve as the chief fiscal officer of the state, and shall settle and approve accounts against the

3

The Legislature reconciled these provisions in section 717.1242(1), finding that "consistent with [the] legislative intent" to give jurisdiction to the circuit court over the settlement of estates, and jurisdiction to the financial services department over unclaimed property, "any estate or beneficiary . . . of an estate seeking to obtain property paid or delivered to the department . . . must file a claim with the department." § 717.1242(1), Fla. Stat. (2015). The Legislature then laid out an extensive administrative procedure for seeking unclaimed property. The department must make a determination on a claim within ninety days (with some exceptions), id. § 717.124(1)(c), and has a method for determining the priority of conflicting claims, id. § 717.1241. "In rendering a determination regarding the merits of an unclaimed property claim, the [d]epartment shall rely on the applicable statutory, regulatory, common, and case law." Id. § 717.1244. And a person "aggrieved" by the department's decision may petition for an administrative hearing under the Florida Administrative Procedures Act. Id. § 717.126(1).

Only after a claimant has exhausted these administrative procedures may she seek relief in the circuit court. See Atwater v. Citibank Fed. Sav. Bank, 96 So. 3d 1000, 1001 (Fla. 3d DCA 2012) ("The trial court is without jurisdiction to compel

state, and shall keep all state funds and securities." Art. IV, 4(c), Fla. Const. The unclaimed property statute provides that "[a]ny person . . . claiming an interest in any property paid or delivered to the department under this chapter may file with the department a claim on a form prescribed by the department and verified by the claimant or the claimant's representative." § 717.124(1), Fla. Stat. (2015).

the Department to disburse funds without the Department first having determined the entitlement of the claimant to the funds held by the Department."); O'Connor v. Zane, 79 So. 3d 105, 106 (Fla. 1st DCA 2012) (O'Connor I) ("[I]f Ms. O'Connor files a claim under section 717.124, the department must determine whether it is in possession of unclaimed property belonging to Mr. Zane, and if the property consists of cash, it must state the amount. Ms. O'Connor may then obtain legal process or pursue judicial remedies, if necessary, to execute her judgment against the property."); State Dep't of Fin. Servs. v. O'Connor, 155 So. 3d 479, 481 (Fla. 1st DCA 2015) (O'Connor II) ("In O'Connor I, this Court held that O'Connor had not exhausted her administrative remedies because she did not file a claim with the Department pursuant to Chapter 717."). The O'Connor cases are good examples of this interplay between the jurisdiction of the financial services department and the circuit courts.

There, the department was holding thirty-two thousand dollars in the name of a former husband. O'Connor I, 79 So. 3d at 105. The former wife, who was owed child support, moved in the divorce case for a declaration that she was entitled to the money being held by the department. Id. (The same kind of declaration Glen sought in this case.[4]) The trial court dismissed, "finding that [the former wife] had failed to exhaust her administrative remedy of filing a claim with

---

[4] That shouldn't be a surprise. The former wife's attorney in the O'Connor cases is Glen's attorney in this case.

5

the department to recover the funds." Id. at 106. The First District Court of Appeal affirmed, explaining that because the former wife had a claim on the money, she first had to file a claim with the department, and only after a determination was made could she "obtain legal process or pursue judicial remedies." Id. The former wife did that, and after she exhausted her remedies with the financial services department and the department determined the money belonged to the husband she sought judicial relief in the circuit court. See O'Connor II, 155 So. 3d at 481-82. The First District affirmed the trial court's post-exhaustion order to garnish the money to satisfy the outstanding child support obligation. Id. at 485.

Here, as the former wife in O'Connor, Glen first had to file his claim for the insurance annuity with the financial services department pursuant to section 717.1242(1), and exhaust his remedies under chapters 717 and 120. Only after he did that, and the department made a determination, was he permitted to pursue his legal remedies in the circuit court. Because it is undisputed that Glen did not file a claim with the department, the trial court correctly dismissed his petition for declaratory relief.[5] We affirm.

_____

[5] Glen finally contends that the trial court cannot grant a motion to dismiss on exhaustion grounds because exhaustion is an affirmative defense. Glen is incorrect. The Florida courts have affirmed dismissal on exhaustion grounds where it was clear from the face of the initial pleading. This is what the First District did in O'Connor I. 79 So. 3d at 106 ("The circuit court dismissed the motion [for a declaration], finding that Ms. O'Connor had failed to exhaust her

6

administrative remedy of filing a claim with the department to recover the funds. We affirm."); see also Criterion Ins. Co. v. Fla. Dep't of Ins., 458 So. 2d 22 (Fla. 1st DCA 1984) (affirming dismissal of amended complaint seeking declaratory relief for failing to exhaust administrative remedies).